1824

Kiersted
vs
Rogers & Garland

---

JUNE.                           KIERSTED vs. ROGERS & GARLAND.

A judgment by default in an action of *assumpsit* on a promissory note, is an admission of the cause of action, and the defendant's liability to the amount of the note, which must be produced on the trial that it may be seen whether any part of it has been paid, but which need not be proved

An endorsement in blank of a promissory note does not transfer the interest in the note, without some further act done by the holder. The act of filling it up may be done by him at any time, before or at the time of the trial

If the holder of a promissory note fills up the blank endorsement, and makes it payable to himself, he must sue as endorsee, but if it is not filled up he may sue in the name of the endorsor

Where an order, in nature of a writ of inquiry at bar, under the act of 1794, ch. 46, charges the jury to inquire of the damages, omitting *and costs*,

APPEAL from *Baltimore* county court. *Assumpsit* on a promissory note, dated the 1st of April 1819, drawn by *B. Arnold*, for $617 09, payable six months after date to the defendant, (the appellant,) or order, and by him endorsed to *J. Snyder*, who endorsed it to the plaintiffs, (the appellees,) and it was by them endorsed in blank. The defendant being ruled to plead to the declaration, made default. The record then states, "for which the plaintiffs ought to recover against the defendant their damages by occasion of the nonperformance of the promises and undertakings; but because it is unknown to the court here, what damages the plaintiffs have sustained by reason of the premises, therefore let a jury thereupon appear before the court here on the fourth Monday of March next, by whom, &c. to recognize, &c. and diligently to inquire what damages the plaintiffs have sustained by reason of the premises aforesaid," and the cause is continued, &c. At the next term the parties appeared, "and the jurors of that jury, whereof mention is above made, being ballotted, empannelled and accepted, that is to say," &c. "who being called, come, and being elected, sworn and affirmed, and charged to inquire of the damages sustained by the plain-

and the inquisition of the jury is for damages, and *about ten* dollars for costs—these are mere formal defects, which might have been amended by the inferior court, and may be amended in the appellate court under the act of 1809, ch. 153, s. 2

tiffs in the premises, and after evidence being given to them of and upon the said premises, went from the bar of the court here to consult and consider of their inquest of and upon the premises aforesaid; and the said jury, having consulted and agreed among themselves, return to the bar of the court here, and forthwith return their inquisition, under their hands and seals, to the court here, the tenor whereof is in form following, to wit: This inquisition made, indented and taken at bar, in *Baltimore* county court, in an action of trespass on the case, depending in the said court between *Elisha Rogers* and *Nathaniel Garland*, plaintiffs, and *Luke Kiersted*, defendant, witnesseth, that we, the jurors whose names are hereto subscribed, and seals affixed, being duly empannelled, sworn, and charged to inquire of the damages and costs sustained by the said plaintiffs in the said action, by reason of the nonperformance of the assumption and promise in the declaration in the said case mentioned, having heard the evidence given in the said action, and duly considered the same, do find and assess the damages sustained by the said plaintiffs, in the said action, to the sum of seven hundred and sixteen dollars forty-one cents, current money, and the sum of about ten dollars, like money, costs of the said suit. In witness," &c. Judgment was rendered for $1250 current money, the damages in the declaration, and $29 01 costs of suit.

At the trial, and before the jury retired from the bar, the plaintiffs offered in evidence the promissory note mentioned in the declaration, and a protest thereof for nonpayment, made at the request of *The Franklin Bank of Baltimore*, the holders of the original note, (which appeared to have been endorsed in blank by the plaintiffs,) on the 4th of October 1819, by *Thomas Rogers*, a notary public. But did not prove the hand-writing of either drawer or endorsor. They also gave in evidence, that the following words, written on the back of the protest, viz. "Protest, Oct. 4th, 1819. Notice of *Luke Kiersted*, directed to him, *Fell's Point, Baltimore*, put into the post office. Do. for *John Snyder*, left at his store. Do. given to *Rogers & Garland*, evening of protest, by *D. Rogers*," were the proper hand-writing of *Daniel Rogers*, who is now dead. The defendant on this evidence prayed the court to direct the jury, that the plaintiffs were only entitled to

nominal damages. Which direction the court, [*Hanson* and *Ward*, A. J.] refused to give. The defendant excepted, and appealed to this court.

The cause was argued before BUCHANAN, Ch. J. EARLE, and MARTIN, J.

*Glenn* and *Speed*, for the Appellant, contended, 1. There was not legal proof of the cause of action against the defendant. The hands-writing of the maker and endorsor of the note ought to have been proved. *Peake's Evid.* 244, 245. *Esp. Dig.* 169. *Snowden vs. Thomas,* 2 *W. Blk. Rep.* 748.

2. The inquisition of the jury was void for uncertainty, and no judgment could be rendered thereon. 6 *Jacob's L. D.* tit. *Verdict,* 343, 344. *Mahoney vs. Ashton,* 4 *Harr. & M'Hen.* 214, per *Chase*, J.

3. The judgment was erroneous, it being for a different sum from that found by the jury. 6 *Jacob's L. D.* tit. *Verdict,* 344. *Coy vs. Hymas,* 2 *Stra.* 1171.

4. The order for the writ of inquiry was erroneous, there being no entry that it was made on motion of the plaintiffs, or of their attorney, nor that the jury were to inquire of the damages *and costs.* 1794, *ch.* 46. *Harris vs. Jaffray,* in this court, where the point was raised, and the counsel for the appellee considering it a valid objection, obtained a writ of diminution in order to have the record amended.

5. The plaintiffs had parted with their interest in the note upon which the action was brought. They had endorsed it, and it was protested at the request of *The Franklin Bank of Baltimore,* who were stated to be the holders. *Chitty's Plead.* 148, 378. *Welch vs. Lindo,* 7 *Cranch,* 159. *Mendez vs. Garreroon,* 1 *Ld. Raym.* 742.

6. There was not sufficient notice given to the endorsor.

*R. Johnson,* for the Appellees. The judgment being by default, it was not necessary, on executing the writ of inquiry, to prove the hands-writing of the maker and endorsors of the note. *Anonymous,* 3 *Wils.* 155. The practice is now for the court, without the intervention of a jury, to assess the damages on a judgment by default in an action on a promissory note. *De Gaillon vs. L'Aigle,* 1 *Bos. & Pull.* 368. *Rashleigh vs. Salmon,* 1 *H. Blk.* 252. A judg-

ment by default admits the cause of action. 3 *Blk. Com.* 397. *Green vs. Hearne,* 3 *T. R.* 301. There is nothing, therefore, in any of the objections founded on the proof of the cause of the action. The endorsement of the note in blank by the plaintiffs, shows that the suit must be brought in their names, even if the note had been transferred to the bank. *Gray & Biddle vs. Woods,* in this court, at December term 1808. *Ringgold vs. Tyson,* Ibid December term 1810. *Hudson vs. Goodwin,* 5 *Harr. & Johns.* 115. The question then is, is there any error in the order for the writ of inquiry. the inquisition and the judgment thereon? Here no inquiry was necessary, as the court might have assessed the damages, and entered the judgment. But having a jury, all may be considered as surplusage respecting the order for an inquiry and the inquisition. The form, however, as used, is substantially correct; 2 *Harr. Ent.* 88, 121; and if erroneous, may be amended under the act of assembly of 1809, *ch.* 153, *s.* 2. If the jury omit to find costs, the court may make such entry as is usual to authorise the allowance of costs. *Bale vs. Hodgetts,* 1 *Bing.* 182, (8 *Serg. & Low.* 288.) It is too late now to take advantage of the uncertainty as to the costs, or any defect in the judgment.

<span style="float:right">1824.<br>Kiersted<br>vs<br>Rogers & Garland</span>

EARLE, J. delivered the opinion of the court. We fully concur in the opinion pronounced by *Baltimore* county court in the bill of exceptions in this record. They refused, on the prayer of the defendant, to direct the jury, that the plaintiffs were only entitled to nominal damages, and in this they were undeniably right. The judgment by default is an admission of the cause of action, and the defendant's liability to the amount of the note, which must be produced on the trial, that it may be seen whether any part of it has been paid, but which need not be proved. This admitted liability to the plaintiffs' action might also be considered an answer to the appellant's objection to the affirmance of the judgment, that the plaintiffs endorsed away the note by a blank endorsement, and are therefore not entitled to a recovery. But this answer need not be here insisted on, inasmuch as it has been several times adjudged in this court, that an endorsement in blank does not transfer the interest in the note or bill, without some further act done by the holder. The act of filling it up may be done by him at

1824.

Kiersted
vs
Rogers & Garland

any time, even at the time of the trial. If the holder fills up the blank endorsement, and makes it payable to himself, he must sue as endorsee; but if it is not filled up, he may sue in the name of the endorsor. See *Chitty on Bills*, 149, and the cases there cited; and see also *Gray and Biddle vs. Wood*, in this court. The plaintiffs endorsed to *The Franklin Bank of Baltimore*, as it is said, for collection, but the note was not transferred, let the motive have been what it might. It was in blank, and transferred no interest, and being subsequently in their hands, it was in their power to do with it as they pleased—to fill up the endorsement, or to erase it, or to make any other disposition whatsoever of it in their volition. There is then no error in this part of the case.

The two objections made on the argument to the record, we will now proceed to consider. It was objected, that the order in nature of a writ of inquiry does not charge the jury to inquire of the damages *and costs* sustained by the plaintiffs in the action; and that the inquisition found, is uncertain and erroneous, in finding *about ten* dollars current money, for the plaintiffs' costs of suit. That these are in themselves errors, all must admit; but whether they are of a character to reverse the judgment, is the question to engage the attention of the court. If they are mere formal defects, they might have been amended in the court below, and may be amended here under the act of 1809, *ch.* 153, *s.* 2. Our inquiry, then, is into the character of these defects in the record.

Costs were never given at common law *eo nomine*, yet they were in reality always considered and included in the quantum of damages, in such actions where damages were recoverable. The jury were found to be inadequate judges of the amount of costs incurred by the plaintiff, and their inadequacy led to the introduction of the statute of *Gloucester*, 6 *Edw.* I, *ch.* 1, which gave costs in all cases where the party is to recover damages. Vide *Hullock's Law of Costs*, 2. A gross sum was assessed by the juries, in their verdicts, for damages and costs, the word *damna*, in its largest sense, including costs, they being a damage to the plaintiff; but the almost universal mode after the statute, as may be seen by the old books of entries, was to assess damages to a certain amount beyond the plaintiff's costs and charges, and for his costs and charges to a cer-

1824.

Kiersted
vs
Rogers & Gorland

tain other sum, which was usually a nominal sum. Hence the origin of the judgment for costs *de incremento*, which appears, from a recent authority, to be the accustomed entry in *Great Britain* to this day. *Bale vs. Hodgetts*, 1 *Bingham*, 182, (8 *Serg. & Low.* 238.) *Sayer's Law of Costs*, 332. As it was the office of the jury to find and assess the damages, so after the statute of *Gloucester*, it became the unquestionable province of the courts, through its officers, to tax the costs the party is at in prosecuting his action, although, according to the *British* forms, it must be *de incremento*. In statutes passed since the reign of *Edw*. I, where costs are given, the costs are of the taxation of the court; and the most diligent search will perhaps justify us in saying, that a statute since that period has not been enacted, in which the assessment of costs *eo nomine*, has been exclusively given to the jury. Was such a statute to be made, its injunctions must be obeyed, and *qüo ad hoc*, it would be considered, according to its language, an actual or virtual repeal of the statute of *Gloucester*, in a case that sounded in damages. The act of 1794, *ch.* 46, is not however a statute of this description. It is not its object to give costs to a party not before entitled to costs, but it is simply intended, for the very good reasons assigned by the act, to authorise trials at bar in cases on interlocutory judgments, where writs of inquiry had been usually executed before the sheriff in the country. The trial in open court being merely substituted for a trial of the same matter in the country, it could not have entered into the views of the legislature, to give more enlarged powers to the trying jury in the one case than in the other—to innovate upon the common principle, and to empower a tribunal to assess costs as such, which for ages before had been found unequal to the purpose. Where the act directs the jury to be charged to inquire into the damages and costs, the term *costs*, it seems to us, must be understood in the sense in which it is contemplated in relation to the subject for which it professes to provide, that is, in relation to writs of inquiry, and the proceedings under them. That in these the costs to be inquired into and found, are merely nominal, will be seen by an attentive examination of *Lilly's*, and other books of entry, and by a view of the before mentioned case of *Bale vs. Hodgetts*. In that case the jury found damages only, and the court suffered the

plaintiff to amend the inquisition, by the insertion of *a no-minal sum* for costs, to entitle him to his judgment *de in-cremento*. The form of entry, it is proper to remark, seems to have fallen into disuse in this state. For years back it has been the practice in our superior courts to enter judgments for the damages assessed by the jury, and for the costs taxed by the court, overlooking entirely the former method of finding a nominal sum by the jury, and giving the judgments for costs as an increase of the nominal sum. This practice furnishes evidence of the disregard in our courts of the costs found by the jury, and may be considered in some measure as a key to the true meaning of the word "*costs,*" as used by the act of 1794. That act has been in force for 30 years, and the forms of our courts have never corresponded with it. In that to be found in *Harris's Entries*, a book compiled with great care and diligence, after the passage of the law, the order charges the jury to inquire into the damages only. This point was not decided in the case of *Harris vs. Jaffray.* It was evaded by a writ of diminution, on the return of which the objection to the record appeared to have been removed.

Let the formal errors suggested in the record be amended, and the judgment affirmed.

JUDGMENT AFFIRMED.