COMMONWEALTH OF PENNSYLVANIA, USE OF
WARREN *v.* WARREN

[No. 132, October Term, 1953.]

468

*Decided May 21, 1954.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*W. Giles Parker, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *Hamilton P. Fox,* State's Attorney for Wicomico County, on the brief, for appellant.

*Vaughn E. Richardson,* with whom was *Richard M. Politt,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order sustaining a demurrer at law and granting a motion to quash.

In August, 1953, the Clerk of the Circuit Court for Wicomico County received a petition entitled "Com-

plaint for Support, Commonwealth of Pennsylvania, Ex rel. Beulah Warren, Complainant, vs. George Warren, Defendant," under the Uniform Reciprocal Enforcement of Support Act, "Support of Dependents", Code (1951), Article 89C, as amended by Chapter 498 of the Acts of 1953. Attached was a certificate of the Judge of the Municipal Court of Philadelphia stating that the said Judge had found "that the allegations contained in the Complaint set forth facts sufficient to establish that the defendant [George Warren] owes a duty of support to the dependents [his wife and two minor children] named in the Complaint and that the Defendant should be compelled to answer such Complaint and be dealt with according to law." There was also filed an affidavit of inability to pay the filing fee or other costs, an authenicated copy of the Uniform Support Law of Pennsylvania, and exemplifications in usual form in which the Clerk of Court in Pennsylvania and the Judge of the aforesaid Municipal Court certified as to each other. The case was docketed as a law case on the law docket of the Circuit Court for Wicomico County and a summons issued in standard form, as in civil cases on the law side of that Court.

On December 7, 1953, after the defendant was returned as summoned, a demurrer and a so-called motion to quash was filed. Both the demurrer and the motion alleged that such proceedings are unknown to the common law, that there is no valid statute in Maryland authorizing such proceedings, and that the statute is unconstitutional. After argument, a docket entry was made on December 9, 1953, "Demurrer sustained and Motion to Quash granted," from which the appellant appeals here. There is no indication in the record before us that a judgment was entered in this case. The single contention made by the appellee, George Warren, to sustain the order below is that the Support of Dependents Act, *supra,* is unconstitutional because it does not specifically provide for trial by jury.

The only case to which we have been referred and which we have been able to locate, passing upon the constitutionality of the Uniform Support of Dependents Act, is *Duncan v. Smith*, (Court of Appeals of Kentucky, 1953), 262 S. W. 2d 373. In that case the constitutionality of the statute was upheld. Appearing in the case *amici curiae* were the Attorneys General of Florida, New York, Oregon, Rhode Island, Utah, Colorado, Indiana, West Virginia, New Jersey, New Mexico, Idaho, Alabama, and Delaware. Although in that case the constitutionality of the Act was attacked on eight grounds, no objection was made that a right to a jury trial was denied.

No contention is here made that this is a criminal proceeding. It was said in a memorandum prepared and presented to the 1953 Annual Meeting of the National Association of Attorneys General: *"Confusions Regarding Civil and Criminal Remedies.* The basic purpose of the reciprocal laws is to provide an alternative to criminal extradition, which in the past has proven to be ineffective as a method for enforcing support. It is true that the Uniform Act contains two sections (5 & 6) [Code (1951), Art. 89C, *supra,* Secs. 5 & 6] relating to extradition. It was not the intention, however, of the drafters that this should be an invitation to more extensive use of extradition. The extradition sections were put in to bring up to date the provisions of criminal extradition which relate to support duties. In addition, Section 6 of the Uniform Act provides that an obligor who submits to the court and makes payment in accordance with its order shall be relieved of extradition for non-support."

This memorandum also says: "The basic method of operation under the reciprocal acts is quite simple. An obligee (person to whom duty of support is owed) petitions the designated court in her home community; that court verifies the petition, attaches its certificate, and transmits the case to a court in the responding state where the obligor (person owing support) is now pres-

ent; the responding state court takes jurisdiction over the obligor, ascertains whether a duty of support is owed, and enters the necessary support order. Interrogatories and depositions are used if the obligor denies that he is liable. The proceeding is civil in nature and confrontation is not necessary. As might well be expected, such a novel approach to the interstate enforcement of support duties is bound to run into certain difficulties caused by varying interpretations, lack of understanding, and occasional lack of cooperation. On balance, however, it appears that the reciprocal support laws have been remarkably effective and are bringing in many hundreds of thousands of dollars in support payments that would otherwise have to be paid in public relief costs."

It appears from the series of Hand Books of the National Conference of Commissioners on Uniform State Laws that the Commission was not concerned with the form of proceedings to be used or whether the action was to be legal or equitable. In the thirty-seven states which have adopted the Act, the titling of the proceedings differ. In twenty states the titling is "Petition"; in ten states "Action"; and in seven states "Complaint". The types of courts specifically provided with jurisdiction vary greatly. Various statutes vest jurisdiction in District Courts, Equity Courts, Juvenile Courts, Probate Courts, Domestic Relations Courts, Municipal Courts, and in Ohio in "Any Courts of Record". Alabama, Arkansas and Michigan are the only states according to our determination which specifically indicate that the matter is one of equity rather than of law. Provisions in the following states give some indication that the proceedings are to be handled as equity cases. Louisiana vests jurisdiction in Juvenile Courts; Massachusetts in Probate Courts; Rhode Island in Juvenile Courts, if children are involved; Virginia in Juvenile, Domestic Relations, Circuit or Corporation Courts; New Jersey in Juvenile or Domestic Courts; and Oklahoma in District or Family Relations Courts. Although no

light is shed on the question before us, the Uniform Reciprocal Enforcement of Support Act is interestingly discussed in "Pennsylvania's Uniform Support Law" by M. Louise Rutherford, Deputy Attorney General of Pennsylvania, *Temple Law Quarterly*, Winter, 1953, Vol. 26, pages 223-239, and in "Uniform Enforcement of Support Act in Massachusetts", *Boston University Law Review*, April, 1953, Vol. 33, pages 217-226. The question, whether the proceedings under this Act should be in law or in equity, has apparently been left to the individual states, the set-up of the courts in the different states being so varied.

In Maryland, Section 7 of Article 89C, *supra*, provides: "Duties of support enforceable under this Article are those imposed or imposable under the laws of Maryland upon the alleged obligor during the period for which support is sought." Section 9 provides jurisdiction "* * * in the Circuit Court of any county in this State, either the Circuit Court or the Circuit Court No. 2 in Baltimore City, Juvenile Courts and Trial Magistrates having jurisdiction over the enforcement of laws respecting duties of support." Although the statute does not specifically state that the proceedings should be in equity or that the Circuit Courts in the county should hear the cases in equity, the only courts in Baltimore City having jurisdiction are the Circuit Court and Circuit Court No. 2, which are both equity courts. The juvenile courts are courts of equity for juvenile causes.

Support and maintenance of dependents as a civil action has long been a matter cognizable in equity. Code (1951), Art. 16, Sec. 34, and Art. 16, Sec. 75. For over one hundred years equity has asserted jurisdiction over the maintenance, support and education of infants in those situations where the father had no means or was an improper person to care for the child and the infant had property of his own. *Story's Equity Jurisprudence*, 14th Ed., Sec. 1763. Similarly, early in the history of equity jurisprudence, courts of equity would, if a wife had any equitable property within the court's jurisdiction, de-

cree the wife a suitable maintenance out of such funds in case of the husband's inability or refusal to maintain her. Of course, this particular jurisdiction of equity was rendered largely obsolete by the adoption of statutes abolishing the common law interest of the husband in the estate of his wife. *Story's Equity Jurisprudence,* Sec. 1859; *Pomeroy's Equity Jurisprudence,* 5th Ed., Secs. 1114, 1119.

The power to award separate maintenance has long been recognized in Maryland when cause for divorce is shown. In *Helms v. Franciscus,* 2 Bland, Chancery 544, (1830), it was stated that the High Court of Chancery always had, even under the Provincial Government, entire jurisdiction of such cases of claims for alimony, or for separate maintenance out of the husband's estate, founded on his misconduct, and that the statute of 1777, conferring upon courts of equity the jurisdiction over alimony traditionally exercised by the Ecclesiastical Courts of England, made no change in the law. Indeed, as early as 1727, the chancellor, upon a suit brought by a wife against her husband for support and maintenance, awarded the following decree: "That the defendant pay to the complainant ten pounds per annum by four quarterly payments; and it is also decreed, that he provide her a house, and that the defendant pay unto the said complainant, all her costs and charges by her in the said cause laid out and expended." *Codd v. Codd,* reported in footnote in *Hewett v. Hewett,* 1 Bland, Chancery 100, note (b). In many states there are statutes which authorize suits for separate maintenance. *Ann. Cas.* 1913D, note, page 1132-1143. Such a statute was passed in Massachusetts, authorizing the court to make an order for the support of a wife when the husband fails, without just cause, to support her or has deserted her, or where the wife for justifiable cause is living apart from the husband. In the case of *Bigelow v. Bigelow,* (1876), 120 Mass. 320, and later in *Buchnam v. Bucknam,* (1900), 176 Mass. 229, 57 N. E. 343, tried in the probate court, the constitutionality of that law was

upheld. In these cases the husband claimed that the statute violated the state constitution in that it did not provide for a jury trial. It was held that the statute was merely an extension and enlargement of the remedies existing in cases of marriage, divorce and alimony, and therefore falls within a class of subjects which prior to the adoption of the constitution were judicially dealt with without a trial by jury. The constitutional guarantee of a trial by jury extends only to the type of cases in which the right of trial by jury existed at the time of the adoption of the constitution.

We are of opinion that this case should have been docketed on the equity side of the Circuit Court for Wicomico County and the case will be remanded for that purpose. In this State a court of equity has the power and full right to decide without a jury every question of law and fact which may arise out of the subject matter before it and over which it has jurisdiction, and the trial by issue forms no necessary incident to the proceedings of such court. *Chase v. Winans,* 59 Md. 475, 479. Finding that the proceedings should be in equity, it is not necessary that we pass upon the right to a jury trial in a proceeding at law, or whether a jury trial is there forbidden under the Uniform Reciprocal Enforcement of Support Act in a law court.

As above set forth, from the briefs and the transcript before us, no final judgment was entered in this case on the law side of the court. Of course, the sustaining of a demurrer is not a final judgment. Code (1951), Art. 89C, *supra,* as amended by Chapter 498 of the Acts of 1953, provides in Section 12(c): "The court of this state acting as a responding state may, pursuant to the statement of the court of the initiating state or on its own initiative discharge all duties imposed by this Article without fees or other costs to the petitioner." Therefore the mere quashing of the proceedings was not a final judgment as to costs. The appeal is premature and must be dismissed. *Penny v. Maryland State Police,* 186 Md. 10, 45 A. 2d 741; *Goodman v. Clark,* 193 Md.

521, 69 A. 2d 496; *Montgomery Co. Welfare Board v. Donnally*, 195 Md. 442, 73 A. 2d 505; *Ernst v. Keough*, 197 Md. 554, 556, 80 A. 2d 23, 24; *O'Keefe v. Scott*, 198 Md. 310, 83 A. 2d 860. The case will be remanded for the removal from the law to the equity court for Wicomico County for further proceedings, Code (1951), Art. 75, Sec. 125.

> *Appeal dismissed, with costs, and case remanded for further proceedings as herein indicated.*