585 A.2d 238

Tom J. BILLMAN, et al.

v.

STATE OF MARYLAND DEPOSIT INSURANCE FUND
CORPORATION, et al.

No. 525, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Feb. 4, 1991.

2

**4**

John R. Fornaciari, Robert M. Disch and Eckert, Seamans, Cherin & Mellott, on the brief, Washington, D.C., for appellants, Billman, Crysopt, Batts Neck and First Through Sixth Batts Neck Companies.

Warren K. Rich, Susan T. Ford, Frank E. Couper and Rich, Tucker & Rice, Annapolis, on the brief (Brett Anto-

nides and Odin, Feldman & Pittleman, Fairfax, Va., on the brief of counsel), for appellant William J. Harnett.

Neil J. Dilloff, Jonathan D. Smith, Timothy U. Sharpe and Piper & Marbury, Baltimore, on the brief (J. Joseph Curran, Jr., Atty. Gen. and Dennis M. Sweeney, Deputy Atty. Gen., Baltimore, on the brief of counsel), for appellees MDIFC.

Argued before WILNER, C.J., and BISHOP and CATHELL, JJ.

BISHOP, Judge.

This appeal is one of several related cases, each of which stems from the savings and loan difficulties that have plagued Maryland for the past several years. *See, e.g., Billman v. State Deposit,* 80 Md.App. 333, 563 A.2d 1110 (1989), *vacated and remanded,* 321 Md. 3, 580 A.2d 1044 (1990). On September 29, 1986, suit was brought by the State of Maryland Deposit Insurance Fund Corporation (MDIF), as Receiver for Community Savings & Loan, Inc., and Community Savings & Loan, Inc. (Community) against Batts Neck Corporation (BNC), the First through Sixth Batts Neck Companies, Epicenter Consolidated, Ltd., Epic Holdings, Ltd., Crysopt Corporation (Crysopt), Tom J. Billman (Billman) and other individuals who were former officers and directors of Community. The claims against several of the defendants were dismissed so that only BNC, the First through Sixth Batts Neck Companies, Crysopt and Billman remained. William J. Harnett filed a Motion to Intervene which was granted for the sole purpose of contesting the priority of MDIF's judgment against Crysopt. Harnett's claim has been dismissed.

On November 10, 1989, MDIF and Community filed a Motion for Sanctions for failure to provide discovery. The Circuit Court for Montgomery County (Joseph H. H. Kaplan, J., sitting by designation) granted the Motion for Sanctions and ruled, pursuant to Md.Rule 2–433(a), that the facts in the Complaint were deemed admitted and taken to be established and that the defendants were prohibited

from opposing plaintiffs' designated claims.[1] An interlocutory order was entered against defendants on the issue of liability. The remedy was determined after a hearing on March 6, 1990, at which a final judgment was entered in favor of plaintiffs. The court ruled, *inter alia*, that Community was entitled to either the property or the proceeds of foreclosure sales in certain cases then pending in the Circuit Court for Queen Anne's County, that otherwise would have been paid to the grantors of the deeds of trust. Additional facts will be included in our discussion of the questions presented.

## ISSUES PRESENTED

Appellants present the following issues:

I. Whether the trial court erred in granting a default judgment in favor of MDIF as sanction for a discovery violation without a hearing on the issue of damages;

II. Whether the relief granted by the trial court was correct;

III. Whether the trial court erred in denying appellants' motion for summary judgment on the grounds of *res judicata;* and,

IV. Whether the trial court erred in denying appellants' motion for summary judgment under Md.Corps. & Ass'ns. Code Ann. § 2–419 (1985).

---

1. The facts alleged in the Complaint that were deemed to be admitted were more than sufficient to permit the entry of a judgment. These allegations included unfair and unreasonable dealings by the defendants with Community, the obtaining of loans from Community "that were commercially unreasonable, unfair and burdensome to Community", conspiracy in wrongful acts in "knowingly receiving the fruits and proceeds of those ... acts, and for conversion of the property of Community." It was further alleged that Billman in concert with the others through his positions as officer and director acquired large sums of money contrary to his and their fiduciary duties to Community.

## I.

On September 29, 1989, appellees noted the depositions of Billman, Crysopt, and the First through Sixth Batts Neck Companies. The depositions were set for November 7, 1989, and included requests for production of documents, including BNC's state income tax returns for 1985 and 1986 which had not been requested previously.[2] On November 6, 1989, one day before the scheduled depositions, appellants filed a Motion for Protective Order That Discovery Not Be Had. The trial court denied the motion and ordered that the depositions proceed as scheduled.

Appellants failed to appear for their depositions and to produce the requested documents. Appellees filed a Motion for Sanctions requesting that a judgment by default be entered against each of the appellants. After a hearing, the trial court granted the Motion for Sanctions. The trial court ruled that, pursuant to Maryland Rule 2–433(a), the facts in the Complaint were deemed admitted and taken to be established, and that Billman, Crysopt, BNC and the First through Sixth Batts Neck Companies were prohibited from opposing appellees' designated claims. An interlocutory judgment was entered in favor of appellees on the issue of liability and a hearing was scheduled to determine the appropriate remedy.

MDIF requested the court to restore to Community the property, or the right to the proceeds of sale of that property, that Billman acquired during the "reorganization" of Community and its parent company. MDIF informed the court that it was seeking only this equitable relief and would abandon the remaining claims for relief requested in the Complaint. After the hearing on the remedy, the trial court granted the relief sought by MDIF.

---

2. In their Motion for a Protective Order, appellants conceded that they had not produced the state tax returns previously, but they objected to the production of the tax returns on the grounds that they were irrelevant and privileged.

Appellants argue that the trial court erred in granting a default judgment in favor of appellees as a sanction for a discovery violation. Specifically, under this first issue, appellants contend A) that the trial court erred in granting a default judgment as a sanction because the deposition was noticed in bad faith and because there was no prejudice to appellees; B) that they were deprived of their constitutional right to a jury trial on the issue of damages; and, C) that they were deprived of due process by entry of a default judgment on the issue of damages. We will discuss each of these contentions *seriatim.*

## A.

■ The trial court granted the default judgment in favor of MDIF pursuant to Md.Rule 2–433(a) which provides:

(a) **For Certain Failures of Discovery.**—Upon a motion filed under Rule 2–432(a), the court, if it finds a failure of discovery, may enter such orders in regard to the failure as are just, including one or more of the following:

(1) An order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;

(2) An order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; or

(3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, *or entering a judgment by default that includes a determination as to liability and all relief sought by the moving party against the failing party* if the court is satisfied that it has personal jurisdiction over that party. If, in order to enable the court to enter default judgment, it is necessary to take an account or to determine the amount of dam-

ages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury.

Instead of any order or in addition thereto, the court, after opportunity for hearing, shall require the failing party or the attorney advising the failure to act or both of them to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. (emphasis added).

In Maryland, "a trial judge has a large measure of discretion in applying sanctions for failure to adhere to the discovery rules." *Mason v. Wolfing*, 265 Md. 234, 236, 288 A.2d 880 (1972). Maryland Rule 2–433(a) clearly provides that entry of a default judgment is an appropriate remedy for a discovery violation. Where the ultimate penalty of a default judgment is invoked, it cannot be disturbed on appeal without a clear showing that the trial court abused its discretion. *Id.*

Appellants maintain that the deposition notices in the instant cases were an attempt by appellees to posture for a default judgment and avoid a trial. Appellants argue that the depositions were not noticed in a good faith effort to undertake discovery since the plaintiffs had already deposed Billman and cross-examined him in a separate but related trial. Appellants also argue that their failure to submit to the depositions in no way prejudiced the ability of appellees to prepare and try their case. Finding no merit in appellants' arguments, we affirm.

 The depositions were not noticed in bad faith. Appellees were entitled to avail themselves of all discovery procedures permitted under the Maryland Rules governing civil cases, including the taking of depositions. Maryland

Rule 2–402(a) governs the scope of discovery, and it provides:

> **(a) Generally.**—A party may obtain discovery regarding any matter, not privileged, including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter, if the matter sought is relevant to the subject matter involved in the action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. It is not ground for objection that the information sought is already known to or otherwise obtainable by the party seeking discovery or that the information will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. An interrogatory or deposition question otherwise proper is not objectionable merely because the response involves an opinion or contention that relates to fact or the application of law to fact.

Appellees sought to question Billman concerning the documents he had already produced. They also sought the two state tax returns which appellants had not produced. Maryland Rule 2–411 states that a party may depose a person for the purpose of discovery or for use as evidence in the action or for both purposes. It is not a ground for objection that the information sought is already known or otherwise obtainable by the appellees. *See,* Md.Rule 2–402(a). Similarly, it is not a ground for objection that the information sought was discovered by appellees in a different civil action. Leave of court to take a deposition is required only in certain limited situations including when an individual has previously been deposed *in the same action.* Md.Rule 2–411. Since Billman had not been deposed previously in this action and, since the discovery sought was clearly relevant, appellees were entitled to conduct discovery pur-

suant to the Maryland Rules, including the taking of depositions.[3]

■ Appellants' argument, that the trial court erred in granting a default judgment because their failure to submit to the deposition did not prejudice the appellees, must also fail. The Maryland Rules do not require that a showing of prejudice is necessary to support the entry of a default judgment for failure to comply with the discovery rules. In fact, Md.Rule 2–433(a) clearly provides that once the trial court finds a failure of discovery, it may impose various sanctions.

In *Williams v. Williams,* 32 Md.App. 685, 363 A.2d 598 (1976), although holding that there was an abuse of discretion, the Court stated:

> As for the circumstances where the "ultimate penalty" may properly be imposed, Chief Judge Hammond observed in *Lynch v. R.E. Tull & Sons, Inc.,* 251 Md. 260, 261, 247 A.2d 286 (1968):
>
>> "There have been suggestions that this ultimate sanction usually will be invoked only where the failure is wilful or contumacious [citing cases], but the power of the court to act is not thus limited and there may be other occasions when this *gravest sanction* can properly be invoked." (Emphasis added.)

*Id.* at 691, 363 A.2d 598.

. . . . .

In virtually every case where the ultimate sanction has been imposed, such action has been taken in the presence of contumacious or dilatory conduct on the part of the plaintiff or when the noncomplying party had disobeyed a direct order of the court to depose, or to show cause, to answer interrogatories, or to respond to his opponent's motion for dismissal or default judgment. While the Court of Appeals has held that dismissal or default may

---

**3.** This is an unusual and complex case. We do not suggest that depositions should be routinely taken to "acquire" information already known or readily available by less onerous means.

be imposed even where a party's failure to comply with a discovery order is neither wilful nor contumacious, *Lynch v. R.E. Tull & Sons, Inc.*, 251 Md. 260, 247 A.2d 286 (1968), *supra*, its ground there for affirming such action by the trial court was principally that appellant had not provided a transcript and "[t]hat which is before us does not permit us to find an abuse of discretion in Judge Shure's actions." 251 Md. at 262.

*Id.* at 695, 363 A.2d 598.

■ Other cases have similarly held that the "ultimate penalty" of default judgment may be imposed where a party's failure to comply with a discovery order is neither wilfull nor contumacious. In *Kipness v. McManus*, 14 Md.App. 362, 286 A.2d 829 (1972), we recognized that "the power of the court to invoke the ultimate sanction of dismissal of the action with prejudice or entering a judgment by default against the offending party is not limited to instances where the failure is wilful or contumacious." *Id.* at 364 n. 1, 286. A.2d 829. In *Rubin v. Gray*, 35 Md.App. 399, 400, 370 A.2d 600 (1977), we stated that "[t]he authority to impose this 'gravest of sanctions' . . . is not limited to wilful or contemptuous failures to answer [interrogatories], but may be imposed for a deliberate attempt to hinder or prevent effective presentation of defenses or counterclaims, or for stalling in revealing one's own weak claim or defense." Finally, in *Berkson v. Berryman*, 63 Md.App. 134, 492 A.2d 338 (1985), we ruled that the trial court did not abuse its discretion when it imposed the ultimate sanction for a party's violation of a discovery order even when there were less stringent sanctions available. The power of the court to impose a default judgment is not limited to situations where the failure to comply with a discovery order is wilful or contumacious. *Id.* at 142, 492 A.2d 338.

■ One of the fundamental objectives of Maryland's broad and comprehensive discovery rules is to require disclosure of facts and thereby to eliminate, as far as possible, the necessity of any party going to trial while confused

about the facts that gave rise to the litigation. *Rubin v. Weissman,* 59 Md.App. 392, 400–01, 475 A.2d 1235 (1984); *Klein v. Weiss,* 284 Md. 36, 55–56, 395 A.2d 126 (1978); *Williams v. Moran,* 248 Md. 279, 290–92, 236 A.2d 274 (1966). Although the court did not explicitly find that appellants were prejudiced, and no such finding was required, appellants' failure to appear for deposition certainly deprived appellees of the opportunity to avail themselves of all the discovery procedures permitted under the Maryland Rules. Appellants' Motion for a Protective Order was denied and the court ordered that the depositions proceed as scheduled. There was disobedience of this direct order of the court. Based on the foregoing, we hold that the court did not err in awarding a default judgment in favor of appellees as a sanction for a discovery violation.

### B.

█ Appellants contend that they were deprived of their constitutional right to a jury trial on the issue of damages. Article 23 of Maryland's Declaration of Rights[4] clearly guarantees the right of trial by jury only in certain instances. The right is guaranteed 1) when issues of fact exist; 2) in a civil proceeding; 3) in a court of law; and 4) where the amount in controversy exceeds five hundred dollars. It follows then, that where liability has been decided by a default, where there is no issue of fact for a jury to decide and where the only relief requested is equitable in nature, there is no constitutional right to a jury trial and the relief may be determined by the court. *See State Farm v. Schlossberg,* 82 Md.App. 45, 63, 570 A.2d 328 (1990).

█ In Maryland, there is no right to trial by jury in equity cases. *Chase v. Winans,* 59 Md. 475 (1883); *Penn-*

---

**4.** Article 23 of Maryland's Declaration of Rights provides:
The right of trial by jury of all issues of fact in civil proceedings in the several courts of law in this State, where the amount in controversy exceeds the sum of five hundred dollars, shall be inviolably preserved.

*sylvania v. Warren*, 204 Md. 467, 474, 105 A.2d 488 (1953). Although for some purposes law and equity were merged by revisions to the Maryland Rules in 1984,[5] the merger was never intended to limit or expand the right to trial by jury in matters of law or to expand the right in equity cases. *See* Committee Note to Md.Rule 2–301 ("The merger of law and equity does not affect the right to jury trial."). "If a claim is brought that historically would have been filed on the law side of the court and a jury trial is properly demanded, a jury will hear the case. Equitable claims will be decided by the court without a jury." *Hashem v. Taheri*, 82 Md.App. 269, 272–3, 571 A.2d 837 (1990) *citing* P. Niemeyer and L. Richards, *Maryland Rules Commentary* 125 (1984). In the instant case, the court properly exercised its equity jurisdiction and granted the equitable remedy requested by the appellees.[6]

## C.

 Appellants argue that they were denied their constitutional right to due process because the court did not conduct a hearing on damages which included the right to present evidence, cross-examine witnesses and hold appellees to their burden of proof. We disagree.

After granting appellees' Motion for Sanctions, the trial court ruled, pursuant to Md.Rule 2–433(a), that the facts in the Complaint were deemed admitted and taken to be established and that appellants were prohibited from opposing appellees' designated claims. The allegations in the Complaint, when deemed admitted, established that, during the time BNC was a subsidiary of Community, it acquired the First through Sixth Batts Neck Companies for the purpose

---

5. Md.Rule 2–301 provides that "[t]here shall be one form of action known as 'civil action.'"

6. In their memorandum concerning the remedy, appellees agreed to abandon all other claims for relief if the court restored to Community the assets that Billman acquired during the "reorganization" of Community and its parent company.

of buying and owning waterfront real estate on Kent Island. During 1984, BNC acquired the following:

February 8, 1984—419 acres (known as Batts Neck Plantation) $2.65 million

March 21, 1984—267 acres (known as Adams Ellis Farms) $533,500.00

October 1, 1984—185 acres (adjacent to above listed properties) $643,000.00

At some time prior to May 13, 1985, BNC divided the property into 22 separate parcels. Through a series of transactions, Billman received the stock of BNC and, therefore, the property that BNC owned. Appellees requested "recission of the sale and an injunction ordering the return to Community, among other things, the stock of BNC and the title to the property."

In their Memorandum Concerning the Remedy, appellees stated that subsequent to the filing of the Complaint many of the parcels were sold. The remaining parcels were accurately described in Exhibit 2 to the Memorandum. Four of those parcels were subject to deeds of trust in favor of Community and the rest of the property was unencumbered. Defaults occurred under the deeds of trust and Community foreclosed. In light of the events that occurred subsequent to the filing of the Complaint, appellees stated that it was no longer necessary to pursue all of the originally requested remedies. Rather, they agreed to abandon all other requests for remedies if the court restored to Community the property that Billman acquired during the "reorganization" of Community. The location and identity of the property requested by appellees were not contested.

Where a cause of action is such that the plaintiff is entitled to recover either a fixed or liquidated amount or where the amount of damages is ascertainable by mere calculation, the defendant's default admits his liability for that amount. *Kiersted v. Rogers,* 6 H. & J. 282 (1824). In the case *sub judice,* the plaintiffs were entitled to recover certain property or proceeds from the sale of that property. Since the remedy sought was fixed and easily determined

by mere reference to the Complaint, all that was required was for the court to grant the equitable remedy sought. No calculations or further findings of facts were necessary.

 Although this case involved an equitable remedy it is similar to cases involving actions for liquidated damages in that the remedy sought is certain and does not require any further factual determinations. Where an action is for a sum certain and liquidated, no hearing on the issue of damages is required. *See, e.g., Stewart v. Hicks,* 182 Ind.App. 308, 395 N.E.2d 308, 312 (1979) (where action is for liquidated sum certain no hearing on damages is necessary); *Adolf Coors Co. v. Movement Against Racism & Klan,* 777 F.2d 1538, 1543 (11th Cir.1985) (judgment of default awarding cash damages cannot properly be entered without a hearing unless the amount claimed is a liquidated sum or capable of being determined mathematically); *M. Clifton Edson & Son v. McConnell,* 9 Mass.App. 930, 404 N.E.2d 692, 693 (1980) (in absence of account stated annexed or other liquidated sum, it was not appropriate to award default judgment without a hearing).

In *Miller v. Miller,* 70 Md.App. 1, 519 A.2d 1298 (1987), we stated that "where the relief to which the party obtaining the judgment is entitled *remains to be determined,* the defaulting party has the right to participate in any hearing for that purpose and to present evidence on the issue." *Id.* at 22 n. 11, 519 A.2d 1298 (emphasis added). In the instant case, all of the facts necessary to award the equitable remedy were established in the Complaint. The location and identity of the property and proceeds from the foreclosure sales were not contested, and there was no element of relief remaining to be determined. Consequently, there was no reason for the court to conduct a hearing and the appellants were not deprived of their constitutional right to due process.

## II.

 Following the filing of memoranda by the parties and a hearing on the remedy, final judgment was entered

on all counts and the court awarded Community the proceeds of the foreclosure sales of the property or, if the foreclosure sales were not completed, then the property itself. Appellants contend that Community was unjustly enriched because BNC spent its own money to acquire and improve the property. We disagree and explain.

When an officer or director breaches his duty of loyalty to the corporation by usurping a corporate opportunity for his personal benefit, the corporation may claim all of the benefits of the transaction for itself. *Guth v. Loft*, 5 A.2d 503, 510–11 (Del.1939), *cited with approval, Maryland Metals v. Metzner*, 282 Md. 31, 45 n. 5, 382 A.2d 564 (1978). *See also, Faraclas v. City Vending Co.*, 232 Md. 457, 460, 463, 194 A.2d 298 (1963); Clark, *Corporate Law*, § 7.1, at 224 (1986). This holds true whether the officer or director spent his personal money or corporate money. *Weissman v. A. Weissman, Inc.*, 374 Pa. 470, 97 A.2d 870, 872 (1953). When the purchase of property is found to be a usurpation of a corporate opportunity and the corporation's money was used, the corporation is entitled to delivery of the property outright or the entire proceeds of the sale of the property. If, however, the officer or director's personal money was involved, he is entitled to the costs of acquiring the property, upon delivery of the property to the corporation. If the property has been sold, the officer or director's profit is delivered to the corporation. *See, e.g., Faraclas*, 232 Md. at 460, 194 A.2d 298 (appellant officer to deliver stock to appellee company upon payment to appellant officer of the purchase price where the trial court found that appellant officer usurped the company's opportunity to purchase its own stock); *Weissman*, 97 A.2d at 872 (the purchase by a corporate officer of a corporate mortgage for his personal benefit was a usurpation of a corporate opportunity and thus extinguished the corporation's liability on the debt and left the corporate officer with no claim against the corporation except for the money he expended to purchase the mortgage); 18B Am.Jur.2d *Corporations* § 1774, at 627 (1985) (property acquisition which usurps a corporate oppor-

tunity is to be transferred to the corporation at cost or, if sold, the profits made are transferred).

The facts set forth in the Complaint demonstrate that the directors and officers of Community caused Community to transfer BNC to Crysopt, and ultimately to appellant Billman, for one thousand dollars above the property's acquisition and improvement expenditures, which was far below the fair market value. The Complaint also demonstrates that BNC was a wholly owned subsidiary of Community, that BNC purchased and improved the property exclusively through loans from Community and that BNC never fully repaid the principle of these loans. The loans by Community to BNC and any payments to Community by BNC were, in essence, a shuffling of money from one Community pocket to another so that it was Community money that purchased and improved the property. Since the only money involved in the purchase and improvement of the property came from Community, it is entitled either to the property or to the entire proceeds from the foreclosure sales.

### III.

On November 22, 1985, appellees filed *MDIF, et al. v. Billman, et al.,* Civil Action No. 11073, in which they named seven individual and three corporate defendants, including appellants Billman and Crysopt. The original five count complaint alleged unlawful loans by Community to the EPIC entities and insider partnerships; unlawful payment of dividends by Community and unlawful receipt of dividends by Community's officers and directors; unlawful tax payments by Community to its holding company; and, unlawful payment of fees to its holding company.[7]

---

7. Because this original complaint was not provided in the Record Extract, the contents are compiled from appellees' Second Amended Complaint which, at oral argument, was explained to differ from the original Complaint by the addition of count VI. This count alleged that individual defendants who were directors of Community caused or permitted Community to spend or loan excessive, exorbitant and unjustifiable amounts of money for director and officer salaries,

On September 26, 1986, appellees filed the instant action, then entitled *MDIF, et al. v. Batts Neck Corporation, et al.*, Civil Action No. 18009, in which they named four individual and ten corporate defendants including all appellants. The Complaint alleged that the defendants improperly operated Community by causing Community to sell its subsidiary, BNC, to one of the defendants on unfair and unreasonable terms and to make loans to BNC that were commercially unreasonable and unfair. Appellees alleged that these actions amounted to various breaches of fiduciary duty, fraud and misrepresentation.

On October 24, 1986, appellees moved to consolidate these cases pursuant to Md.Rule 2–503 [8] on the grounds that all individual defendants and three of the corporate defendants were common to both cases and the remaining seven corporate defendants were owned or controlled by Billman or Crysopt. Also, there were numerous facts and laws common to both cases and thus, it would be in the interest of the parties and judicial economy to consolidate.

Appellants opposed the motion and argued vigorously against consolidation. They contended that the two cases involved "entirely separate and discrete transactions" and that there were no common questions of fact or law. Further, appellants planned to assert different defenses and counterclaims in each case. Appellants asserted that by moving to consolidate appellees were "attempting to pound square pegs in round holes."

The court did not consolidate the cases. On February 12, 1988, appellees filed a second amended complaint in *MDIF v. Billman* in which they added a sixth count alleging that

---

bonuses and perquisites for the individual defendants, which was a violation of the duties of care and loyalty owed to Community.

**8.** Md.Rule 2–503 provides in part:

(a) **Consolidation.—**

 (1) *When Permitted.*—When actions involve a common question of law or fact or a common subject matter, the court, on motion or on its own initiative, may order a joint hearing or trial or consolidation of any oral or all of the claims, issues, or actions.

the directors and officers of Community breached their fiduciary duty by spending Community's money for excessive compensation and perquisites. *See, supra* note 7. Trial was held and the jury rendered a verdict in favor of appellees and against Billman on all counts and against Crysopt on all but one count. Subsequently, we reversed all of the judgments entered against Billman and Crysopt, *Billman v. State Deposit,* 80 Md.App. 333, 563 A.2d 1110 (1989), and the Court of Appeals vacated our reversal and remanded. *State Deposit v. Billman,* 321 Md. 3, 580 A.2d 1044 (1990).

In the case *sub judice,* appellants seek reversal of the default judgment on the ground that the case was barred by *res judicata* because the claims could have been litigated in *MDIF v. Billman.* We hold that appellants are estopped from arguing *res judicata* because it directly contradicts their position in their Opposition to Appellees' Motion to Consolidate. The Court of Appeals, in *Kramer v. Globe Brewing Co.,* 175 Md. 461, 469, 2 A.2d 634 (1938), stated the clear rule of law that:

> If parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men, honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them. It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of litigation, must act consistently with it; one cannot play fast and loose.

*See also, Ohio and Miss. Ry. Co. v. McCarthy,* 96 U.S. 258, 267–8, 24 L.Ed. 693 (1878); *Stone v. Stone,* 230 Md. 248, 253, 186 A.2d 590 (1962); *Brunecz v. DiLeo,* 263 Md. 481, 485, 283 A.2d 606 (1971); 28 Am.Jur.2d *Estoppel and Waiver* §§ 68–9 (1966). Having convinced the court not to

consolidate this case with *MDIF v. Billman,* appellants cannot now seek to have it dismissed by asserting that the claims could have been raised and litigated previously.

## IV.

Appellants contend that the court erred when it denied their motion for summary judgment on the issue of whether their actions violated Md.Corps. & Ass'ns Code Ann. § 2–419 (1985). The complaint alleged a violation of § 2–419 and because the facts therein are deemed admitted and established and the appellants are prohibited from opposing them, there is no error in the court's denial of appellants' motion for summary judgment.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.