702 A.2d 436

**Joseph WILSON**

v.

**Jerome STANBURY.**

**No. 232, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Nov. 5, 1997.

Eric J. Davis (C. Edward Hartman, III, James R. Hoffmann, Jr. and Hartman and Egeli, on the brief), Annapolis, for appellant.

Kathleen Howard Meredith (Stephan Y. Brennan and Lliff & Meredith, P.C., on the brief), Baltimore, for appellee.

Argued before CATHELL, SALMON and SONNER, JJ.

CATHELL, Judge.

Joseph Wilson appeals from the granting of a motion for summary judgment by the Circuit Court for Anne Arundel County against him and in favor of Jerome Stanbury, appellee. Appellant filed a case alleging legal malpractice on the part of appellee. Appellee's motion for summary judgment was granted on the basis of judicial estoppel. The only question presented for our review is whether the circuit court erred in granting that motion.

## The Facts

Appellant was involved in an automobile accident that gave rise to the underlying lawsuit. He was stopped at a traffic-control device in Glen Burnie, Maryland. Stopped immediately behind his vehicle was an automobile operated by Stephan Queen. While both appellant and Mr. Queen were stopped, an automobile driven by Rufus Brumfield ran into the rear of the Queen vehicle, thereby driving it into the rear of appellant's automobile. Appellant retained the services of appellee to initiate an action on his behalf to recover for the damages he suffered in the accident. This action constituted the underlying suit. After the limitations period had expired, however, appellee realized he had named only Mr. Queen as a defendant and had not included the real tort-feasor, Mr. Brumfield, in the suit.

Appellee, recognizing a potential liability and a potential conflict of interest because of that potential liability, contacted appellant's proposed new attorney and advised him of his oversight in failing to name Mr. Brumfield as a defendant. The case then was transferred formally to appellant's current attorney. The parties in the underlying case, Mr. Queen and appellant, thereafter were denied a continuance, which they both desired. In order to circumvent the trial court's denial of the continuance, the parties agreed appellant would dismiss that case, refile it, and Mr. Queen would not present a limitations defense, thus giving to themselves that which the circuit court had denied them.

When the suit was refiled by appellant's current attorney, the complaint made several allegations relevant in the case *sub judice*. The new complaint again named only Mr. Queen as a defendant. It asserted that Mr. Queen "operated his vehicle in a negligent, reckless and careless manner . . ., failing to slow for traffic stopped at a red light"; was "reckless, careless and negligent in that he failed to keep a proper lookout"; and he "failed to take the proper steps so as to avoid the collision." The concluding paragraph of the complaint stated:

> The Plaintiff, Joseph Wilson, further alleges that all of his injuries, damages and losses, past, present and prospective, were caused *solely* by the negligence of the Defendant [Queen], without any negligence or want of due care on the part of the Plaintiff contributing thereto. [Emphasis added.]

At the time this complaint was filed, appellant's current attorney was fully aware that Mr. Queen had been stopped behind appellant and that it was Mr. Brumfield who had struck Mr. Queen's vehicle. Appellant was at that point, however, attempting to obtain a settlement from Mr. Queen's insurance carrier. Appellant's counsel believed Mr. Queen's attorney was not aware that the real tort-feasor was Mr. Brumfield, who could not be sued because appellee had allowed the statute of limitations to expire. In a letter to appellee's insurance agent before the second suit was filed, appellant's counsel informed the agent that

Mr. Wilson's car was struck by a vehicle which had been struck by a vehicle behind it. The lawsuit was filed against the driver of the middle vehicle only. The statute of limitations ran in November, 1994.

. . . .

Further complicating the matter are the following facts: *The Defendant's attorney may be under the mistaken belief that his client was the driver of the car causing the accident.* The Defendant's policy limits are $25,000. The Plaintiff is currently seeking an opinion regarding surgery . . ., which would cost in the neighborhood of $40,000 and result in paramount loss of mobility to his neck. [Emphasis added.]

With full knowledge that Mr. Queen was not the responsible party, and a belief that Mr. Queen's attorney was unaware of that fact, appellant's current attorney filed the new case alleging the virtually identical claim of negligence against Mr. Queen. Apparently, it was necessary that the suit be framed in nearly identical terms as the original complaint in order for appellant to maintain his bargaining position with Mr. Queen's carrier.[1] Ultimately appellant received a settlement offer of $20,000 from Mr. Queen's insurance carrier, accepted it, and entered that lawsuit as "settled, paid and satisfied, and dismissed with prejudice." Appellant then filed the instant case against appellee. In it he alleged in pertinent part that Mr.

---

[1]. Had appellant identified Mr. Brumfield in the second complaint, as the party causing the accident and asserted that Mr. Queen's vehicle was the middle vehicle, Mr. Queen's attorney would likely (hopefully) have realized that his client was not responsible for the accident. With the statute of limitations having expired, it could be expected, although not certain, that had the real facts been disclosed and Mr. Brumfield been made a party defendant, he would have inadvertently, or we presume even intentionally, waived the defense, it would have been extremely unlikely. Therefore, in order to keep Mr. Queen's attorney in the dark as to Mr. Queen's real status in respect to liability, appellant's current attorney made assertions that, at the least, he knew to be inaccurate. While Mr. Queen apparently did not know that someone else other than himself was liable, he had no limitations defense because his attorney had waived it when he consented to the dismissal and refiling of the case.

Brumfield had been the negligent party in the accident. The complaint provides:

> Plaintiff [appellant] learned that Defendant [appellee] had sued the driver of the vehicle which struck Plaintiff's vehicle, but not the driver of the vehicle which struck that vehicle and pushed it into Plaintiff's vehicle. Plaintiff further learned that the statute of limitations had expired on his claim against the driver of the vehicle ultimately responsible for the collision, and that it was too late to assert a claim against that driver.

We initially note, with serious concern, that appellant, in filing the second suit against Mr. Queen, did so with full knowledge that Mr. Queen had committed no wrong. Moreover, as is apparent from the correspondence we mentioned above, appellant's counsel believed that Mr. Queen's counsel was unaware of that fact. Rule 1.2(d) of the Rules of Professional Conduct provides that "[a] lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is ... fraudulent." Rule 3.1 provides: "A lawyer shall not bring ... a proceeding, or assert ... an issue therein, unless there is a basis for doing so that is not frivolous...." Moreover, Rule 3.3(a), **CANDOR TOWARD THE TRIBUNAL**, provides:

> (a) A lawyer shall not knowingly:
> (1) make a false statement of material fact or law to a tribunal ...
> (4) offer evidence that the lawyer knows to be false.

Rule 4.1(a)(1) forbids a lawyer from making "a false statement of material fact or law to a third person" in the course of representing a client.

It clearly appears that the second case against Mr. Queen, which alleged he was negligent, was filed by appellant with full knowledge that Mr. Queen was not in fact negligent. It equally clearly appears that one of the purposes in filing and maintaining that second Queen suit was to maintain a negotiating position with Mr. Queen's attorney in order to effectuate a cash settlement from a party whom appellant knew was not responsible for the accident.

■ We conclude our factual discussion by noting, in summary, that the erroneous and inconsistent averments as to Queen's negligence, made in the second Queen suit, were not inadvertent but were made intentionally and with full knowledge that they were either inaccurate or false. Moreover, they were made, or maintained, for the purpose of extracting from a non-negligent party compensation for appellant's alleged injuries, which were caused by a nonparty to that case. We also note, as the cases will indicate, that the purpose of the doctrine of judicial estoppel *is to protect the courts*, not the parties, from frivolous, false, and misleading allegations being made in judicial proceedings.

### The Law

Quoting from *Kramer v. Globe Brewing Co.*, 175 Md. 461, 469, 2 A.2d 634 (1938), the Court of Appeals recently reaffirmed the nature of the "concept of judicial estoppel" when it opined in *WinMark Ltd. Partnership v. Miles & Stockbridge*, 345 Md. 614, 620, 693 A.2d 824 (1997):

> " 'If parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men, honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them. It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of litigation, must act consistently with it; one cannot play fast and loose.' "

*See also Billman, infra.*

In *Stone v. Stone*, 230 Md. 248, 253, 186 A.2d 590 (1962), the Court stated:

> "The test [of estoppel by admissions] is not as to whether the admission is true, but as to whether it would be contrary

to public policy and good morals to allow it to be disputed." "Generally speaking, a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and another will be prejudiced by his action." [Brackets in original, citations omitted.]

■ In the case at bar, another person, Mr. Queen, already has been prejudiced by appellant's prior assertion of false allegations of negligence. Appellant has benefitted to the extent of $20,000 from his improper and admittedly incorrect assertions of negligence on the part of Mr. Queen. Moreover, as we have said, appellant's present counsel, whose knowledge is chargeable to appellant, knew that the allegations of Queen's negligence were incorrect. It also is clear that the improper allegations were made intentionally for an improper purpose. Addressing the somewhat similar "clean hands" doctrine, the Court of Appeals noted in *Adams v. Manown*, 328 Md. 463, 474–75, 615 A.2d 611 (1992), that "[t]he clean hands doctrine is not applied for the protection of the parties nor as a punishment to the wrongdoer; rather, the doctrine is intended to protect the courts from having to endorse or reward inequitable conduct." Although *WinMark* and *Adams* were bankruptcy cases, it would appear that the observations of the Court of Appeals, in respect to judicial estoppel and the "clean hands" doctrine, apply to the current case.

This Court also has commented on judicial estoppel or, in the language of some of the cases, judicial admissions. In *Billman v. State of Md. Deposit Ins. Fund Corp.*, 86 Md.App. 1, 585 A.2d 238, *cert. denied*, 323 Md. 1, 590 A.2d 158, and *cert. denied*, 502 U.S. 909, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991), the appellants argued that the case we were reviewing was barred under res judicata principles because the issues in the case could, and should have been, litigated in a prior case. We noted that when attempts had been made in that prior case to consolidate it with another case, the appellants contended that the two cases were " entirely separate and dis-

crete transactions.'" *Id.* at 19, 585 A.2d 238. We ultimately stated: "We hold that appellants are estopped from arguing *res judicata* because it directly contradicts their position in their Opposition to Appellees' Motion to Consolidate." *Billman,* 86 Md.App. at 20, 585 A.2d 238.

The Court of Appeals noted in the title dispute case of *Van Royen v. Lacey,* 266 Md. 649, 651–652, 296 A.2d 426 (1972), that both in a prior case and in a prior pleading, the appellees had made title claims inconsistent with the positions they were then taking. The Court noted that "estoppel by admission or by pleading" had long been a part of Maryland law. *Id.* at 651, 296 A.2d 426. It cited, among other cases, *Edes v. Garey,* 46 Md. 24, 41 (1877), in which the Court quoted the even earlier English case of *Cave v. Mills,* 7 H. & W. 927, which provided: " A man shall not be allowed to blow hot and cold, to claim at one time and deny at another.'" *Van Royen,* 266 Md. at 652. In the mechanic's lien case of *Brunecz v. DiLeo,* 263 Md. 481, 283 A.2d 606 (1971), Brunecz, a general contractor, brought a previous action against DiLeo to enforce a mechanics' lien. Brunecz, however, asserted his claim against lot 5, which was the wrong property, instead of lot 6. The Court noted:

> Since the DiLeos throughout the proceeding seem to have conceded that the house was built on lot 5, and Mr. DiLeo confirmed this in his sworn deposition, it would appear that they are estopped by record or estopped judicially from challenging the validity of the lien insofar as it applies to lot 5.

*Id.* at 485, 283 A.2d 606 (citations omitted). *See also Wilson Bros. v. Cooey,* 251 Md. 350, 359, 247 A.2d 395 (1968)(noting that where the "Lienors"' had acknowledged the senior status of another mortgage in a previous proceeding but had thereafter challenged that mortgage's validity, the doctrine of estoppel by admission may have been applicable); *Mobberly v. Mobberly,* 60 Md. 376 (1883)(holding that a party who had previously contended in a different suit that he had no defenses under the common law could not later assert that title was in himself by way of adverse possession).

We have not discovered any Maryland case in which the doctrine of judicial estoppel has estopped a plaintiff from suing (the plaintiff's former attorney) in malpractice because of the improper actions of an attorney the plaintiff later retained to bring the malpractice suit against the defendant. We are cognizant that our affirmance of the lower court's granting of appellee's motion for summary judgment may well not end the litigation in this matter, although it will end, absent further appellate review, this litigation against appellee. We also are aware that if appellant was unaware of his current attorney's incorrect assertions in the second Queen suit, our affirmance terminates his cause of action against appellee through no direct fault of his own.

We are especially cognizant, however, that the doctrine of judicial estoppel has evolved to protect the courts from just the type of egregious conduct that occurred, on appellant's behalf, during the second Queen case and the instant case. If we were to hold that the doctrine did not apply under these circumstances, it would be hard to imagine when it would be applicable.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**