HEDWIG   SCHWANTECK   ET   AL.   *vs.*   AUGUSTA BERNER.

*Wills—Caveat—Legally Insufficient Evidence of Undue Influence—Withdrawing Issues From Jury.*

A testator bequeathed all of his property to his wife with the exception of a small legacy to his daughter by a former marriage. Some years before the relations between the daughter and her stepmother became strained and the latter caused the daughter to leave her father's house. Testator's property had been earned in large part by the labor of his wife. There was no evidence that she knew of the contents of her husband's will or that she prejudiced him against his daughter. He was an industrious, capable man and remained on friendly terms with his daughter who married and was not dependent upon him for support. Upon a caveat to the will by the daughter. *Held*, that there was no legally sufficient evidence of lack of testamentary capacity or that the will had been procured by the exercise of undue influence.

The Act of 1894, ch. 516 (Code, Art. 75, sec 87G.) was designed to give a defendant the right to offer evidence in defense after the Court has rejected his prayer taking the case from the jury or directing a verdict for him. It has no relation to a case where such instruction is granted.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J.,FOWLER, BRIS- COE, PAGE, and SCHMUCKER, JJ.

*Richard Bernard* and *Alfred D. Bernard*, for the appellants.

*Samuel J. Harman* and *Joseph N. Ulman*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal brings up for our review the action of the Court of Common Pleas of Baltimore City in instructing the jury to find for the caveatee at the trial of issues sent to that Court from the Orphans' Court of Baltimore City.

Lewis Berner by his will made on May 28th, 1895, gave to his only child and daughter, Mrs. Hedwig Schwanteck, a legacy of two hundred dollars and gave all of the rest of his estate to his wife, Augusta, who was the stepmother of the daughter. The testator died on February 9th, 1901, and the daughter and her husband filed their caveat to the will as soon as it was offered for probate. Under this caveat three issues were framed, respectively presenting the questions of the proper execution of the will, the testamentary capacity of the testator and the procurement of the making of the will by undue influence and were sent to the Court of Common Pleas for trial.

At the trial of the issues in the Court of Common Pleas the caveatee, at the close of the testimony for the caveators, offered three prayers, asking the Court to direct the jury to render a verdict in her favor. The first prayer asked for a verdict under the first issue because the due execution of the will was admitted by the caveators. The second and third prayers asked for a verdict under the second and third issues respectively, because there was no legally sufficient evidence of want of testamentary capacity or of the procuring of the execution of the will through undue influence. The Court granted all of these prayers and its action in so doing forms the subject of the appeal.

The due execution of the will was conceded at the argument of the case and it was not seriously contended that the record presented any evidence of want of testamentary capacity. The real controversy was whether there was evidence legally sufficient to go to the jury tending to show that the execution

of the will had been procured by undue influence practiced upon the testator by the caveatee.

After a careful examination of the evidence appearing in the record which for the purpose of this inquiry must be taken to be true we have come to the conclusion that the learned Judge below was right in granting these prayers. It has usually been the habit of this Court in cases like the present one to confine itself to stating its conclusions as to the legal sufficiency of the evidence and abstain from a review or discussion of it in detail. *Stirling* v. *Stirling*, 64 Md. 150; *Moore* v. *McDonald*, 68 Md. 341; *Hiss* v. *Weik*, 78 Md. 453. We will, however, briefly notice the testimony upon which the action of the Court was predicated.

It appears from the evidence that the testator was a native German who came to Baltimore in 1869 when about twenty-nine years old. He shortly afterwards opened a saloon and restaurant, on Howard street near the Richmond Market, which he continued to conduct until he gave up business about July, 1895. Those of the witnesses who knew him agree that he was a good business man, industrious in his habits and " unlike the general run of saloon men he was very temperate." He made his will while still engaged in business when about fifty-five years old and when he was, so far as the record discloses, in good health and, although he lived for six years thereafter, there is no evidence that he made any attempt to alter its provisions or expressed any desire to do so. Nor does it appear that he had ever declared a purpose to make any other disposition of his property than that accomplished by his will. Here we find everything to strengthen and nothing to weaken the normal presumption of the law of the possession of testamentary capacity on his part at the time he made the will.

There is also a complete absence from the record of any testimony connecting the caveatee with the making of the will or the suggestion of its provisions, or of the use by her of any persuasion or influence upon the testator to induce him to make a will. It does not appear that she was present at the

execution of the will or took any part in its preparation or was even aware that her husband had made it. Nor, as we have already said, is it shown that the testator had ever intended to make a different disposition of his property than the one directed in his will.

The contention of the appellant is that the caveatee was inflamed with jealousy at the attention bestowed by her husband upon his daughter and for that reason and because of her own selfish greed she estranged his mind from the daughter and procured him to exclude her from other than a nominal participation in the distribution of his estate. But in our opinion, while the testimony appearing in the record shows a fixed aversion on the part of the caveatee to the daughter there is no evidence connecting that aversion on her part with the disposition of his property made by the testator in his will.

The testimony bearing upon the relations existing between the caveators and the caveatee shows that the daughter was born to the testator in 1864 by a wife residing in Germany from whom he soon afterwards separated and was subsequenty divorced. He was married to the caveatee in Baltimore in May, 1883. In 1880 when living with the caveatee as his wife he sent for the daughter who came to Baltimore at his expense and was received by him into his home and always treated by him with kindness and affection. She was also kindly received and was for several years well treated by the caveatee, but in the winter of 1883, nearly twelve years prior to the making of the father's will the relations between the two women became so strained that the stepmother refused to have any further intercourse with the daughter or to permit her to reside longer in the family. After an ineffectual effort to secure her reception at home the daughter went out to service in different families until March, 1884, when she returned to her maternal grandparents in Germany where she was married in 1885. Since her marriage she has lived with her husband; for the first few years in Germany, and since then in Baltimore.

During the few months which intervened between the

daughter's departure from her father's house and her return to Germany she several times met her father at other places than his home. At these interviews he treated her with affection and he occasionally sent her small sums of money. He also told her that he would gladly have her return home if his wife would permit it but that she could not do so without the wife's consent. While the daughter was in Germany the testator answered in a friendly tone letters which she wrote to him, and he maintained a friendly attitude toward both her and her husband after they came to Baltimore to live, but he seems never to have visited their home or to have cultivated any intimacy with them.

According to the testimony the stepmother and not the daughter was to blame for their estrangement and separation from each other but the dislike of the former for the latter partook rather of the nature of fixed aversion or indifference than of bitterness or positive hostility. The record furnishes no direct evidence of efforts on the part of the stepmother to prejudice or embitter the mind of the testator against his daughter, or that any change in his feeling or disposition toward her in fact took place.

The failure on the part of the testator to provide more fully than he did for his daughter in his will was unusual and under ordinary circumstances might be regarded as unnatural and at variance with the dictates of parental affection, but when viewed in the light of the facts of the present case it is not so unreasonable as to furnish evidence that the will was not his free and unconstrained act. During the years in which his moderate property, amounting in value to about $12,000, was earned, the caveatee devoted herself with untiring industry not only to managing but to performing the actual labor of his household, kitchen and restaurant and probably contributed as greatly as he did to the accumulation of the property. He had recognized this fact in 1883 by conveying to her the house in which they then resided and carried on business and again in 1895 by taking in their joint names the title to the new home on Presstman street which he then purchased.

When he made his will his daughter had been married for ten years and was no longer dependent on him for support. On the contrary both he and his wife were then growing old and his property, mainly accumulated by their joint labor, was not more than enough to provide her a plain living.

The testimony in the record when taken all together does not in our judgment furnish any evidence tending to prove that the testator did not make the will which he intended to make or that the caveatee, who is not shown to have had any connection with the making of the will, procured its execution by the exercise of such undue influence upon the testator as to deprive him of his free agency and subordinate his will to her own, which is the degree of influence that the law regards as undue and sufficient to avoid a will procured by its exercise. *Davis* v. *Calvert*, 5 G. & J. 302; *Wittman* v. *Goodhand*, 26 Md. 105; *Tyson* v. *Tyson*, 37 Md. 582; *Crockett* v. *Davis*, 81 Md. 154; *Gunther* v. *Gunther*, 69 Md. 565.

There is no evidence whatever in the record even suggesting that any other person than the caveatee exercised any influence over the testator in connection with the making of his will.

The appellant also contended that the granting of the prayers at the close of the caveator's evidence was premature because the Act of 1894, ch. 516, relates only to actions of law in tort or contract and does not apply to proceedings under a caveat. That Act has no reference whatever to cases like the present one in which the Court *grants* the defendants' prayer at the close of the plaintiff's evidence. It is apparent from the contents of the Act that it relates solely to cases in which the Court *rejects* the defendant's prayer offered at that stage of the trial, and its purpose is to prevent the defendant whose prayer has been thus *rejected* from losing the right of offering evidence in his own behalf because of having submitted the prayer as would have been the case before the passage of the Act.

We find no error in the action of the Court below either as to the propositions contained in the prayers which were

granted or the time of granting them and we will affirm the rulings appealed from.

*Rulings appealed from affirmed with costs.*

(Decided December 4th, 1902.)