HENRY E. WEIL ET AL. *v.* TERRELL AIR
CONDITIONING AND HEATING
COMPANY ET AL.

[No. 1005, September Term, 1980.]

*Decided April 13, 1981.*

The cause was argued before MOORE, LOWE AND
MACDANIEL, JJ.

*Alfred J. Horvath,* with whom was *Ronald S. Goldberg* on
the brief, for appellants.

*Robert G. Blackford* for appellees.

LOWE, J., delivered the opinion of the Court.

I

Appealing from a verdict directed against them in the Circuit Court for Montgomery County because of insufficient proof of damages, appellants argue first that:

> "The [appellants], through the testimony of Mr. and Mrs. Weil sufficiently established at least the fair market value of those items of their property totally destroyed so that the entry of a directed verdict against the plaintiffs at the close of their case on the ground that they had inadequately proven damages constitutes reversible error."

We have carefully reviewed the record and found that it is impossible to determine what items were destroyed and what items were cleaned or repaired. Appellant would have us speculate upon that from the itemized numbers next to each item in a Proof of Loss form admitted solely for the purpose of proving appellants' insurance carrier's subrogation interest. The inferences are not available even if the document were admitted for purposes broad enough to include damages.

While it is true that Mr. Weil stated that the settlement as represented by that document was considered by him to be "fair and reasonable," he preliminarily indicated that the figures represented on the paper prepared by an absentee adjuster were the subject of negotiation rather than indicative of evaluation of the property damaged or lost.

> "A. Yes. There was a considerable dispute about whether or not certain items, for example, should be depreciated or whether they should not be depreciated. It was our contention with respect to the new pieces, particularly the furniture, that depreciation was not appropriate in the case since all these items were essentially new. The insurance company, of course, took a different view, so it was during the process of negotiation that we agreed on this figure."

Notwithstanding the general statements that

> "Everything in the home was essentially new. . .,"

and that the Weils

> "had estimates made of all the damages and presented to the insurance company,"

one could only speculate that the figures represented on the adjuster's Proof of Loss statement may have represented fair market value. The inference more likely is that they represented a compromise between a naturally inflated claim of worth to a deprived owner and an equally natural inclination of an insurer to escape recompense as penuriously as possible. The trial judge did not err in directing the verdict upon the failure of appellants properly to prove damages.

## II

We are sorely tempted not to respond to appellants' second question, not only because they have failed to include in the extract evidentiary documents upon which they rely (thus violating Md. Rule 1028 b), but also because there is a dearth of meaningful argument which violates the spirit if not the letter of Md. Rule 1031 c 5, indicating that the brief should contain argument in support of the position of appellant. On the other hand, appellee's reply was equally innocuous, doing little more than pointing out the deficiencies in appellants' "argument." Neither apparently bothered to review the history of the applicable rule on motions for directed verdict (Md. Rule 552) so as to supply us with an indication of the intent of the Court of Appeals rule or its statutory progenitor. The relevant portions of Md. Rule 552 are subsections (a) and (b):

> *"Directed Verdict*
> a. Motion for — Grounds to be Stated.
> In an action tried by a jury any party may move,

at the close of the evidence offered by an opponent or at the close of all the evidence, for a directed verdict in his favor on any or all of the issues. Such motion shall state the grounds therefor. An objection on behalf of the adverse party to such motion shall be entered as of course.

b. Offer of Evidence After Denial — Effect.

A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted without having reserved the right to do so, and to the same extent as if the motion had not been made, and in so doing he withdraws the motion."

Appellants contend that:

"Because the [appellee] commenced its defense of the action by introducing documents in evidence during plaintiffs' case in chief and should thus have been required to present all of its evidence before being procedurally entitled to a directed verdict, the Honorable H. Ralph Miller's entry of a directed verdict against the plaintiffs following their case in chief constitutes reversible error."

Their "argument" is that Md. Rule 552 a "suggests" that because appellee introduced two documents (presumably a release and a record of another case dismissal) while cross-examining one of the appellants during their case in chief, appellee was not entitled to a directed verdict. Appellants add that because Md. Rule 552 b provides that a movant withdraws his motion filed at the close of an opponent's case by introducing evidence, "it would stand to reason that . . . a defendant waives his right to even ask for a directed verdict at the close of plaintiffs' case if prior thereto he had introduced documents in evidence."

Appellants' "suggestion" and "reason" are without foundation, but because we are aware that some trial judges have the practice of warning defense counsel that upon introduction of evidence relating to an affirmative defense

(as opposed to evidence attacking credibility of a witness), they lose the right to move for a directed verdict at the close of the plaintiff's case, we have gone somewhat into the history of Md. Rule 552 a and b.

Formerly the practice was to file a prayer asking the court to instruct the jury that the verdict must be for defendant because of a plaintiff's failure to prove his case or a material issue in the case. The prayer was permitted to be considered at the conclusion of the plaintiff's case or at the end of the entire case. *Poe's Pleading and Practice,* Vol. III §§ 293, 295B (6th Ed. 1970). Under the local court rules in certain jurisdictions such as Baltimore City, if the defendant, at the close of the plaintiff's case submitted a prayer to take the case from the jury and such prayer were refused, the defendant could not offer testimony in defense, and the case went to the jury on the plaintiff's evidence alone. In 1894 the legislature sought to alleviate the harshness of requiring a defendant to elect between obtaining an uncertain result of an issue at law (sufficiency of the evidence) or, by abandoning it, purchasing the doubtful result of an issue of fact (to be raised by his plea). Chapter 516 of the Acts of 1894, codified initially as Md. Ann. Code art. 75, § 87A and subsequently as § 96 of the same article, provided:

> "87A. If the defendant in any action at law in contract or in tort shall, at the close of the plaintiff's evidence, *and before offering any evidence or defence,* pray the court to instruct the jury that the plaintiff in such action has offered no evidence legally sufficient to entitle the plaintiff to recover, or a prayer to the same effect, and the court shall reject such prayer, the defendant shall not be precluded from offering evidence of defence, but any defendant in such action may offer evidence of defence as fully and to the same extent as though such prayer had not been offered."

As often happens when a legislature attempts to modify the rigors of judicial procedure or vice versa, the statute opened the door to the possibility of an equally inequitable

result. A defendant could submit his prayer on the legal sufficiency of the evidence offered by a plaintiff and if rejected submit his own evidence, perhaps supplying deficiencies in the plaintiff's testimony. Then even if the factfinder ruled against him based upon the whole case, he could "renew" his motion asking the court to review the case as it stood when plaintiff closed, for sufficiency of the evidence as a matter of law.

When faced with the dilemma presented by the statute, the Court of Appeals ruled in effect that once a defendant's prayer (or motion) is rejected and he elects to afford himself of the statutory right to introduce evidence, the prayer (or motion) is treated as withdrawn. *Barabasz v. Kabat,* 91 Md. 53, 57 (1900). And while it may be "renewed" at the conclusion of all the evidence, at that juncture the sufficiency review must consider *all* of the evidence, of defendant as well as plaintiff, *id.* at 57-58, and the former ruling on the prayer following the close of plaintiff's case is no longer open for review. This was predicated upon a prior holding of the Court in *Harvey v. Balto. & Ohio R.R. Co.,* 69 Md. 339, 343 (1888), which reasoned that "[t]he evidence offered by the defendant may, and often does, supply a defect in the proof of the plaintiff."

That reasoning would not seem to indicate that the introduction of evidence during plaintiff's case would effect a waiver of the right to pray or move for a directed verdict at the conclusion of plaintiff's case; however, we must not overlook the fact that the statutory right to pray for directed verdict did not arise for defendants until

"the close of the plaintiff's case, *and before* offering any evidence or defence. . . ."

While that language seems to provide a condition precedent as to time for offering the prayer (or filing the motion) for a directed verdict, it does not. It is a condition precedent for the introduction of evidence *upon rejection* of such prayer or motion. Therein lies the primary weakness of appellants' contention despite the precise language emphasized above

upon which appellants might have relied had they looked that far.

> "The Act has no relevance whatever to cases like the present one in which the Court *grants* the defendant's prayer at the close of plaintiff's evidence. It is apparent from the contents of the Act that it relates solely to cases in which the Court rejects the defendant's prayer offered at that stage of the trial and its purpose is to prevent the defendant whose prayer has been thus *rejected* from having the right of offering evidence in his own behalf because of having submitted the prayer as would have been the case before the passage of the Act." *Schwanteck v. Berner,* 96 Md. 138, 143 (1902).

The practice evolving from that statute and the case law interpreting it was codified in the General Rules of Practice and Procedure as G.R.P.P.Pt. Three, III, Rule 4 (Directed Verdicts), with minor additions. *See* Explanatory Notes, Appendix, Md. Ann. Code (1947 Cum. Supp.). In 1941 that rule was recodified as Md. Rule 552 with but minimal change. We have no reason to believe that the codification of the law that had evolved, by statute and case interpretation, intended to change the Maryland practice relating to directed verdicts.

In summation we find that subsection (a) of Rule 552 establishes the appropriate procedural junctures at which time a motion for directed verdict will be entertained. Subsection (b) is predicated expressly and exclusively upon

> "the event that the motion is not granted,"

just as its statutory progenitor related solely to the event that

> "the court shall reject such prayer."

*See Schwanteck, supra.* The clause in subsection (b) providing for the withdrawal of the motion upon introduction of evidence after the motion is rejected succinctly sets forth the holding of *Barabasz* and *Harvey,* guarding against

a misuse of the statutory relief provided by the 1894 Act which is incorporated in that subsection.

One final observation is in order in light of the rule codification which incorporated the statute and its several judicial interpretations: We note that the legislature has never acted to contradict the views expressed. To the contrary, it indicated its satisfaction with that codification in the rules by repealing the 1894 Act in a housecleaning of its own. 1957 Md. Laws, Ch. 399. It may also be worth mentioning that whatever solace appellant may have found in the language of the 1894 Act authorizing defendants to submit the prayer (motion) only "before offering any evidence or defence," is certainly no longer available. That language was pointedly omitted when the rule was first adopted by the Court of Appeals in 1941 and was lost to appellant upon the statute's repeal in 1957, if not in 1941.

We should caution, however, that our opinion should not be overread. We have not addressed nor considered whether a trial judge, when exercising his discretion to take evidence out of the usual order, *State v. Hepple,* 279 Md. 265, 273 (1977), might predicate that discretionary exercise upon a defendant's express waiver of a motion for directed verdict at the end of plaintiff's case. We note only that in this case, the judge below did not do so. In fact, his language indicates that upon granting the motion he had considered *all* of the evidence before the jury at the time and had found no adequate proof of damages. That clearly complies with the *Harvey* concept that a defendant's evidence may supply a defect in the proof of plaintiff. *See also Crean v. McMahon,* 106 Md. 507, 525 (1907).

As indicated in part I, our review assures appellant of the validity of that observation. Although the record extract does not indicate that the missing documents were relevant to damages, if they were, it is appellant's own fault that we did not review them as part of our sufficiency review.

*Judgment affirmed.*
*Costs to be paid by appellants.*