604 A.2d 535

**LAKEWOOD ENGINEERING AND MANUFACTURING CO., INC.**

v.

**James QUINN, et al.**

**No. 1118, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

April 14, 1992.

Michael D. Maloney (MaCleay, Lynch, Gregg & Lynch, P.C., on the brief), Washington, D.C., for appellant.

George B. Huckabay (Ortman, Love & Huckabay, Bethesda, G. Mitchell Mowell and Mowell, Nunn & Wadkovsky, Chestertown, on the brief), for appellees.

Argued before WENNER, DAVIS, and MOTZ, JJ.

DAVIS, Judge.

In this appeal from a judgment entered on a jury verdict in the Circuit Court for Kent County, the trial court granted the appellees' Motion for Sanctions and subsequently entered a judgment of default for failure to comply with a discovery order. The trial court thereafter vacated the jury's verdict and ordered a new trial before a second jury, after which the court denied the appellant's motion for judgment. Appellant presents the following questions for our review:

1. Whether the trial court erred in vacating the jury's verdict and ordering a new trial.

2. Whether the trial court erred in granting the appellees' Motion for Sanctions and entering a default judgment as to liability against the appellant.

3. Whether the trial court erred in denying the appellant's motion for judgment during the second trial as to the issue of damages.

For the reasons set forth herein, we shall reverse.

## Facts

On August 18, 1987, James and Linda Quinn (appellees) purchased a model P223 electric fan which was manufactured by the Lakewood Engineering and Manufacturing Co., Inc. (appellant). Approximately six weeks later, on September 26, 1987, a fire occurred in the appellees' home which was attributed to a defect in the fan. The appellees filed suit against the appellant to recover for smoke, fire, and water damage to their property. Trial was held before a jury.

At trial the appellees presented evidence as to the amount of their property damage. Through the testimony of William Pearson, an independent adjuster working for the appellees' insurer, Penn Mutual Insurance Company (insurer), evidence was adduced that the appellees suffered both smoke and water damage to their property in the amount of $24,309.89. Pearson further testified that the actual property damage was $8,000 higher, but that the figure was lowered to meet policy limits. Insurer paid the appellees the sum of $24,309.89 under a homeowner's policy in effect at the time of the fire, which claim is subrogated to that portion of the appellees' damages. Numerous post-conflagration photographs of the appellees' home were also introduced into evidence as proof of damages.

The appellant also introduced the testimony of volunteer fire fighter, Walter R. Strong, who stated that he observed some smoke and fire damage in the appellees' bedroom. On cross-examination of Strong, the appellee introduced into evidence a Maryland Fire Incident Report which indicated that fire, smoke, and water damage was limited to the area of the origin of the fire and estimated damage to the appellees' home to range from $1,000 to $9,999.

At the conclusion of all the evidence, the jury returned a verdict in favor of the appellees, James and Linda Quinn, in the amount of $2,500 and in favor of appellee, Penn Mutual Insurance Company, in the amount of $1,250. Judgment was entered on the jury's verdict on April 10, 1990.

Following entry of judgment, the appellees filed a Motion for New Trial stating that the jury's damage award was inadequate. At the conclusion of a motion's hearing, the trial court granted the appellees' motion and ordered that a new trial as to all issues be set in for April 1, 1991.

On October 19, 1990, the appellees served the appellant with a Request for Production of Documents which specifically requested: (1) information concerning a July 10, 1990 fire in Georgia (hereinafter the Prestridge fire) and (2) "any other fire, property damage, personal injury and/or death caused, or alleged to have been caused by any fan or other electrical appliance manufactured, in whole or part, by the appellant or any subsidiary thereof."

The appellant filed its response and objections to the appellees' request. As to the appellees' first request, the appellant responded that it would supply copies of documents "to the extent that such are relevant or pertinent or otherwise within the scope of discovery." As to the appellees' second request, the appellant objected on the grounds that the request was "vague and ambiguous and overly broad and oppressive." The appellees subsequently filed a Motion to Compel Discovery. A hearing was held on February 12, 1991, at the conclusion of which the trial court granted the appellees' motion and ordered the appellant to produce "all responsive documents pertaining to fires within 16 days from the date of this order [*i.e.*, by February 28, 1991]."

Though the appellant produced some of the documents, the majority of the subject documents were kept in the appellant's Chicago offices, and therefore the appellant presented counsel for the appellees with the following options: (1) travel to Chicago to inspect the records, or (2)

copies would be supplied to the appellees if they agreed to bear the cost of copying and shipping. As neither alternative was acceptable to the appellees, counsel for the appellees granted to the appellant an extension, until March 7, 1991, to produce the requested documents.

On March 5, 1991, the appellant contacted the appellees and proposed that appellant's counsel agree to produce a random sampling by years at the preference of the appellees. The appellees rejected the proposal and filed a Motion for Sanctions, which the trial court granted by entering a default as to liability against the appellant.

At the commencement of the second trial, also held before a jury, the appellant made a motion to reconsider and vacate the entry of default. Concluding that it was "unreasonable" for the appellant to require counsel for the appellees to travel to Chicago to inspect the documents, the court denied the appellant's motion.

Though the order of the court authorized a retrial of all issues, the second trial proceeded solely on the issue of damages. As evidence of their damages, the appellees introduced an inventory of personal property which was destroyed in the fire. The inventory included: quantity and description of each item, place and date of purchase, and the appellees' opinion as to the replacement cost of each item. The items listed totalled $11,484.00.[1]

At both the close of the appellees' case and the close of all the evidence, the appellant moved for judgment arguing that the appellees had failed to prove sufficiently the fair market value of the destroyed items. The court denied the appellant's motion and submitted the case to the jury. Following deliberation, the jury returned an award of $8,000 for the appellees and $24,209.89 for the insurer.[2]

---

1. William Pearson explained that this figure was adjusted to $8,525.63 to bring the claim within policy limitations.

2. Between the appellees' property damage and the insurer's subrogation rights, total damages sought were nearly $40,000.

## Discussion

### Judgment Notwithstanding Verdict/New Trial

█ The appellant first asks us to review whether the trial court erred in vacating the verdict of the jury and ordering a new trial at the conclusion of the first trial. The appellant alleges that the trial court erroneously granted the Motion for New Trial despite the existence of evidence which adequately supported the jury's verdict. More specifically, the appellant argues that the trial court did not assume the truth of all credible evidence (i.e. the Maryland Fire Incident Report and the testimony of Fireman Walter Strong as to the relatively limited area of actual damage), in a light most favorable to the party against whom the motion is made (i.e. the appellant). In reviewing a trial court's grant of a judgment notwithstanding verdict (j.n.o.v.), the appellant has correctly noted that we are required to

> assume the truth of all credible evidence and all inferences of fact reasonably deducible from it tending to sustain appellant's contentions. If, in doing so, we find any legally relevant and competent evidence, however slight, from which the jury could rationally have found that test satisfied, we must reverse the judgments NOV.

*Franklin v. Gupta,* 81 Md.App. 345, 354, 567 A.2d 524 (1990) (citations omitted). Where the record convinces the trial court that there were sound bases, both in law and in reason, for the trial judge's determinations, the granting of the j.n.o.v. will not be held to be arbitrary. *B & K Rentals & Sales Co. v. Universal Leaf Tobacco Co.,* 73 Md.App. 530, 535 A.2d 492 (1988), *rev'd on other grounds,* 319 Md. 127, 571 A.2d 1213 (1990).

█ In the present case, the appellees presented damage estimates amounting to over $24,000. This evidence was presented by one whose interests are diametrically opposed to those of the appellees, the adjuster for the appellees' insurer. As the court remarked, it is the nature of an insurer to pay as little as possible on any given claim. In

this instance the insured actually advocated and paid the appellees $24,000 in damages. In light of the adversarial relationship that generally exists between an insurer and a claimant-insured, an inference may properly be drawn that the amount of damage to which the insurer concedes is, at the very least, the lower boundary of the damage actually suffered. For the jury to return a verdict of $2,500 on a claim that the insurer (whose interest and point of view conflicts with the insured) concedes is worth almost ten times that amount, does indeed shock one's sense of justice and basic fairness.[3] We therefore hold that the trial court did not err in vacating the jury's verdict.

In this State, the law is settled that the decision to grant a new trial is within the sound discretion of the trial court and cannot be disturbed, except under "extraordinary circumstances." *Franklin,* 81 Md.App. at 362, 567 A.2d 524 (citations omitted). A clear abuse of discretion must necessarily be found to overturn a grant of a Motion for New Trial. *Kirkpatrick v. Zimmerman,* 257 Md. 215, 217, 262 A.2d 531 (1970); *Batson v. Shiflett,* 86 Md.App. 340, 586 A.2d 792 (1991). As we have found that the trial court in the instant case did not err in vacating the jury's verdict at the first trial, we hold, accordingly, that the trial court did not abuse its discretion in granting a new trial.

### The Ultimate Sanction

The appellant next argues that the trial court abused its discretion in entering a default judgment as to liability

---

**3.** Both the court and counsel for the appellees noted that the jury at the first trial did not retire to deliberate until after 8:30 p.m. on the night of trial. When asked if they must all agree on the verdict that night, the court instructed them that they would either have to find unanimously that night or return in the morning to complete their deliberations. Counsel for the appellee speculated that the jury, wanting desperately to go home, simply read the Maryland Fire Incident Report, which suggested damages in a range from $1,000 to $9,999, and arbitrarily arrived at their award, rendering its verdict at 12:15 a.m.

against the appellant for failure to produce documents. Maryland Rule 2–432 provides:

(a) **Immediate Sanctions for Certain Failures of Discovery.**—A discovering party may move for sanctions under Rule 2–433(a), without first obtaining an order compelling discovery under section (b) of this Rule, if a party or any officer, director, or managing agent of any party or a person designated under Rule 2–412(d) to testify on behalf of a party, fails to ... file a response ... to a request for production of documents or inspection under Rule 2–422, after proper service.

As there is no issue as to improper service presented herein, Rule 2–432 clearly applies under these facts.

Case law is plenteous prescribing when it is proper to impose "the ultimate sanction" (a default judgment as to some issue in the case) for a failure to comply with discovery. Historically, the rule has been that entry of a default judgment is only properly entered when the failure is willful or contumacious. *Lynch v. R.E. Tull & Sons, Inc.,* 251 Md. 260, 247 A.2d 286 (1968), citing *Peck v. Toronto,* 246 Md. 268, 228 A.2d 252, *cert. denied,* 389 U.S. 868, 88 S.Ct. 139, 19 L.Ed.2d 142 (1967); *Miller v. Talbott,* 239 Md. 382, 211 A.2d 741 (1965); *Smith v. Potomac Electric,* 236 Md. 51, 62, 202 A.2d 604 (1964).

■ More recently, bearing in mind that the decision to impose sanctions is within the sound discretion of the trial court, this Court and the Court of Appeals have ruled that the power of the trial court to impose sanctions is not limited by the requirement that they find willful or contumacious behavior. *Billman v. State of Maryland Deposit Insurance Fund Corporation, et al.,* 86 Md.App. 1, 585 A.2d 238 (1991); *Berkson v. Berryman,* 63 Md.App. 134, 492 A.2d 338 (1985); *Rubin v. Gray, et al.,* 35 Md.App. 399, 370 A.2d 600 (1977); *Lynch v. R.E. Tull & Sons, Inc., supra.*

■ We have previously held that the trial court did not abuse its discretion in imposing the ultimate sanction even

when other less stringent alternatives were available.[4] *Berkson, supra.* Judge Robert M. Bell, writing for this Court, observed, "The decision whether to grant a motion for default judgment for failure to comply with discovery is within the sound discretion of the trial judge and will not be disturbed on appeal in the absence of an abuse of discretion." *State Farm Mutual Automobile Insurance Company v. Schlossberg,* 82 Md.App. 45, 62, 570 A.2d 328 (1990), quoting *Berkson,* 63 Md.App. at 142, 492 A.2d 338.

In *Lone v. Montgomery County, Maryland,* 85 Md. App. 477, 486–87, 584 A.2d 142 (1991), we discussed discovery violations:

> Lone admits that his answers to the interrogatories were untimely, as they were not filed until February 2, 1990, but blames the clerk's office, arguing that he never received notice of the court's disposition of the Motion to Dismiss.... We hold that the trial judge did not abuse his discretion when he imposed the "ultimate sanction" upon Lone. As he is allowed to do, he assigned little weight to the appellant's unsupported explanation for the failure to file timely. Absent any proof of mistake on the part of the clerk's office, a likely explanation for the appellant's lapse is dilatory conduct, which may properly result in sanctions.
>
> At the time the court imposed sanctions for failure to respond to interrogatories, *the appellant's dilatoriness in pleading had been the subject of a prior Motion for Default Judgment in respect to the failure to answer (which motion had been withdrawn). Additionally, appellant had not responded to interrogatories as he*

---

4. Though the appellees argue that no less onerous sanction available would have been of any significant benefit to the appellees, we do not agree. Since the purpose of the discovery order was to have the appellant produce the documents, the court could have simply ruled that the appellant must pay the cost of copying and shipping, which is definitely less onerous than the entry of a default. Having the appellant pay the costs of production was only one alternative open to the trial court; entry of a default was another.

*was required to do, nor had he even responded to the Motion for Sanctions for failure to answer interrogatories after that motion was filed.*

... Even if the judge were to have accepted the validity of Lone's lack of notice argument, which he did not, he nevertheless could have imposed sanctions for failure to comply.

... [W]e cannot hold that it was an improper exercise of the trial judge's discretion for him to have rendered the default judgment.

(Emphasis supplied; footnote omitted.)

In *Billman*, 86 Md.App. at 13, 585 A.2d 238, we said: "There was disobedience of this direct order of the court. Based on the foregoing, we hold that the court did not err in awarding a default judgment in favor of appellees as a sanction for a discovery violation."

While Maryland generally accords to the trial judge great deference in determining the appropriate sanction for failure to comply with discovery rules, we believe that a review of cases from other jurisdictions is instructive on the question of what constitutes an abuse of discretion. In *Fabian v. Norman*, 138 Ill.App.3d 507, 93 Ill.Dec. 234, 238, 486 N.E.2d 335, 339 (2 Dist.1985), the appellate court of Illinois, referring to Illinois Supreme Court Rule 219(c), opined that

[the Rule] authorizes the court to impose sanctions, including an order striking the pleadings and entering judgment, if a party refuses to comply with the discovery rules.... The purpose of sanctions is to promote discovery and not to punish the noncomplying party.... The question of the appropriate sanction, if any, is within the discretion of the trial court and its decision will not be disturbed on review absent an abuse of discretion.... *The entry of a default judgment is the most severe sanction a court can impose on a party, and is only proper where the actions of a party show deliberate, contumacious, or unwarranted disregard of a court's authority.* [Emphasis supplied; citations omitted.]

The District of Columbia Court of Appeals, in a jurisdiction where the ultimate sanction is granted only in "severe circumstances," said in *Hinkle v. Sam Blanken & Co., Inc.*, 507 A.2d 1046, 1049 (D.C.App.1986):

> This court has also taken the position that the dismissal sanction " 'should be granted only upon a showing of severe circumstances.' " ... Although this court has not adopted a formal definition of "severe circumstances," two factors have figured prominently in our analyses: "whether the opposing party suffered any prejudice as a result of the failure to provide discovery and *whether that failure was willful.*" ... Our review of the record in light of these factors persuades us that this is a case where "severe circumstances" existed. [Emphasis supplied; citations omitted.]

Finally, in *Sundor Electric, Inc. v. E.J.T. Construction Co., Inc.*, 337 A.2d 651, 652 (1975), the Court of Chancery of Delaware addressed a circumstance where the party sanctioned attempted to comply:

> Superior Court Rule 37(b)(2)(C), like the comparable Federal Rule, permits a judgment by default against a party who fails to comply with an order of Court. Judgment by default is, of course, the extreme remedy and generally speaking the Rule has been interpreted to require "some element of wilfulness or conscious disregard of the order" before such a sanction is imposed.... It has been frequently held that a motion for such a judgment will be granted "if no other sanction would be more appropriate under the circumstances." ... To state it otherwise, sanctions provided by the Rule for failure to make discovery *"are not ordinarily applied where there has been an active good faith effort to comply."* [Emphasis supplied; citations omitted.]

While we recognize that appellant's good faith efforts, in the case before us, primarily consisted of offers of alternative means by which compliance with discovery could be accomplished (rather than actual attempts to comply), in view of the monumental task in producing the documents

requested, such offers of compromise should be factored in when determining the appropriate sanction. Notwithstanding that these authorities from foreign jurisdictions are based on their own peculiar rules concerning discovery, the common thread running throughout is that a default judgment is generally reserved for a party who willfully disobeys a court order or otherwise demonstrates bad faith. Conversely, where the conduct falls short of being willful or contumacious, courts resort to a less restrictive alternative in an attempt to encourage the party sanctioned to comply with discovery.

As previously discussed herein, the appellant was ordered to produce documents regarding the Prestridge fire and any other documents concerning fires caused by a defect in their products. Though the appellant noted that the requested materials totalled approximately 20,000 items, the court nevertheless required them to produce the documents. On several occasions the appellant attempted to convince the appellees either to share the cost of production of the documents or to accept less than full production of the documents, which the appellees refused. Finally, the appellant proposed that the appellees either fly to Chicago, where the documents were kept, to inspect them or agree to pay the $5,000 to $6,000 cost of copying and shipping the documents. The court imposed a February 28, 1991 deadline on production of the documents, and as of March 5, 1991, the appellant had not complied.

Our review of *Billman, Berkson, Lone,* and other decisions discussing the propriety of default as a sanction for failure of discovery reveals that, although the trial court is not limited by the requirement that there be willful or contumacious behavior, generally there exists an element of defiance and/or recalcitrance where the severe sanction of default is imposed. In this case, it was undisputed that the documents in question were located in Chicago, Illinois and that they numbered in excess of 20,000. In contrast to the blatant failure to respond to requests for discovery in the cited cases, appellant made overtures to resolve the impasse

as to who would bear the cost and how discovery could be accomplished to the mutual convenience of both sides.

Most significantly, despite the fact that the trial judge imposed a deadline of February 28, 1991, there were not the multiplicious violations of discovery as described in *Lone, supra.* We believe that the trial judge's order directing discovery of the approximately 20,000 documents located several hundred miles away without a corresponding directive providing for logistics and payment of costs was an abuse of discretion. In so holding, we are not unmindful that the instances are rare in which the trial judge is held to have abused his discretion for entry of a default judgment for discovery violations. We believe that the enormity of the request compels such a result, although there had been no signally willful or contumacious conduct. Accordingly, we reverse the lower court's entry of judgment by default. Since the jury's verdict on the issue of damages is unaffected by the lower court's abuse of discretion in entering default judgment as the sanction for failure to comply with discovery, we shall remand the case on the issue of liability only.

## Motion for Judgment

Finally, for guidance of the lower court upon remand, we consider appellant's last contention. The appellant argues that the trial court erred in denying its Motions for Judgment made at the conclusion of the plaintiffs' (appellees herein) case and at the conclusion of all the evidence, as to the sufficiency of the appellees' evidence regarding the measure of their damages. The appellant argues that the appellees did not present sufficient evidence as to the fair market value of the destroyed items to generate a jury question, and therefore they were entitled to a directed verdict.

In considering a Motion for Judgment, a trial court must consider "all evidence and inferences in the light most favorable to the party against whom the motion is made." Maryland Rule 2–519(b). The court, however, is required to

submit the case to the jury if there is any evidence, however slight, legally sufficient as tending to prove negligence. *See generally, Mass Transit Admin. v. Miller,* 271 Md. 256, 315 A.2d 772 (1974); *Thodos v. Bland,* 75 Md.App. 700, 542 A.2d 1307 (1988); *Brock v. Sorrell,* 15 Md.App. 1, 288 A.2d 640 (1972). In determining "legal sufficiency," the Court of Appeals has declared:

> "The test of legal sufficiency, we have held, 'is whether the evidence serves to prove a fact or permits an inference of fact that could enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the right of the plaintiff to recover.' "

*Cavacos v. Sarwar,* 313 Md. 248, 259, 545 A.2d 46 (1988) (citations omitted), quoting *Curley v. General Valet Service,* 270 Md. 248, 264, 311 A.2d 231 (1973).

When it comes to "Proof of Loss statements" or informal "inventories" of the nature contained in this case, this Court is, to say the least, skeptical. We have found that

> one could only speculate that the figures represented on the Proof of Loss statement may have represented fair market value. The inference more likely is that they represent a compromise between a naturally inflated claim of worth to a deprived owner and an equally natural inclination of an insurer to escape recompense as penuriously as possible.

*Weil v. Terrell Air Conditioning and Heating Company,* 48 Md.App. 439, 441, 427 A.2d 1071 (1981). We, however, also take note of the long-standing rule that an owner of property can testify as to its value.

The appellant argues that a determination of "fair market value" was necessary to establish adequately the amount of the appellees' loss and further contends that, since that express phrase was not used in the appellees' case below, damages were not proven. We are of an opposite opinion. The types of items for which the appellees seek damages are generally consumer goods and therefore their fair market value would be close, if not identical, to their replacement cost and well within the expertise of the appellees.

Were we discussing the loss of art work or a first edition literary work, then some expert appraisal testimony would be required to determine the fair market value of the lost items.

But when considering, as we are here, the loss of food, kitchen utensils, clothing, and children's stuffed animals, the appellees are well qualified to render an opinion as to their fair market value. For those costs the appellees did not know, the appellees asked the professionals and submitted written estimates as to repair or replacement costs.[5] We distinguish this case from *Weil, supra,* which is factually similar, because in that case the insured sought to introduce his own opinion of the cost of repairs to his home and other costs which were not within his realm of knowledge.

When viewing the above evidence and inferences in a light most favorable to the appellees, as was required by Rule 2–519, the trial court found that the appellees presented sufficient evidence to generate a jury question. We can find no error in that ruling.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR KENT COUNTY FOR A NEW TRIAL ON THE ISSUE OF LIABILITY.

COSTS TO BE PAID BY APPELLEES.

---

5. The appellees even obtained a letter from the Chief of Police of Chestertown as to the replacement costs for James Quinn's police uniform and equipment.