**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THE MARYLAND CASUALTY COMPANY,
as Subrogee of Eileen K. Gitelson;
EILEEN K. GITELSON; SELMA
INVESTMENT CORPORATION,
Plaintiffs-Appellees,

v.

THERM-O-DISC, INCORPORATED,
Defendant-Appellant,

and

WHIRLPOOL CORPORATION; EMERSON
ELECTRIC COMPANY,
Defendants.

No. 96-1192

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-93-1132-JFM)

Argued: May 8, 1997

Decided: February 27, 1998

Before WILKINSON, Chief Judge, and RUSSELL* and
MICHAEL, Circuit Judges.

_____

*Judge Russell participated in the decision of this case, but died prior
to the time the opinion was issued. The opinion is filed by a quorum of
the panel pursuant to 28 U.S.C. § 46(d).

Affirmed by published per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John M. Kobayashi, KOBAYASHI & ASSOCIATES, P.C., Denver, Colorado, for Appellant. Mark E. Opalisky, COZEN & O'CONNOR, Philadelphia, Pennsylvania, for Appellees.

_____

**OPINION**

PER CURIAM:**1**

This appeal requires us to consider the sufficiency of an evidentiary determination made by the district court. Specifically, we are called upon to decide whether the district court properly carried out its function as evidentiary "gatekeeper" pursuant to the Supreme Court's mandate in Daubert v. Merrell Dow Pharmaceuticals, Inc..**2** Because we find that the district court made its decision to admit certain expert testimony in accordance with the demands of Daubert and its progeny, we affirm its ruling.

Facts and Procedural Background

The underlying facts of this case are straightforward. On the evening of December 30, 1991, fire broke out in Eileen Gitelson's home in Potomac, Maryland. Mrs. Gitelson's insurance carrier, Maryland Casualty Company ("Maryland Casualty"), paid Mrs. Gitelson for her loss, and was subrogated to any claims she had regarding the fire. Maryland Casualty then sued Appellant Therm-O-Disc, Inc. ("Therm-O-Disc") to recover for the damage, alleging that a defective thermostat, manufactured by Therm-O-Disc and contained in Mrs. Gitelson's Whirlpool drier, caused the fire.

_____

**1** This opinion was drafted by Judge Donald S. Russell. Judge Russell died while the case was under submission. The remaining panel members continue to concur in the opinion prepared by Judge Russell.
**2** 509 U.S. 579 (1993).

2

At trial, Maryland Casualty sought to introduce the testimony of James Rodems ("Rodems"), an electrical engineer specializing in thermostats and other electrical switches. Rodems was expected to testify that, in his opinion, the fire that began in Mrs. Gitelson's drier was indeed caused by a malfunction in the Therm-O Disc thermostat. Therm-O-Disc objected to this proferred testimony, and moved in limine to exclude it. As a result of this objection, the district court held a "Daubert-type hearing"[3] to determine whether Rodems's testimony was admissible.

This Daubert hearing lasted several hours, and resulted in the district court's admission of Rodems's testimony. At the close of all evidence in the case, Therm-O-Disc made a motion for judgement as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, arguing that: (A) Rodems's testimony was based on conjecture and speculation and was therefore not properly admitted, and (B) Maryland Casualty had failed to show a causal link between the allegedly defective thermostat and the fire. The district court denied this motion.

The jury returned a verdict in favor of Maryland Casualty, and assessed damages in the amount of $635,893 against Therm-O-Disc. Therm-O-Disc renewed its motion for judgement as a matter of law, which the district court also denied. This appeal followed.

Discussion

I.

Therm-O-Disc's primary argument in this appeal is that the district court failed to apply the test for the admission of expert scientific testimony demanded by Daubert. Within this broad allegation, Therm-O-Disc makes several specific arguments. We consider each in turn, and review the district court's decision to admit the testimony for abuse of discretion.[4]

_____

[3] J.A. at 2.

[4] **General Elec. Co. v. Joiner**, 118 S. Ct. 512, 517 (1997).

A.

Therm-O-Disc first argues that the district court erred in placing on Therm-O-Disc the "burden of proof"**5** regarding the relevance and reliability of Rodems's testimony. Such a shift constitutes error, Therm-O-Disc contends, because "Daubert requires the party proffering the expert testimony to meet its Rule 104(a)[of the Federal Rules of Evidence] burden by a preponderance of evidence."**6** Daubert, however, makes no mention of a burden of "proof" regarding the decision to admit expert scientific testimony. We assume Therm-O-Disc misuses this term to denote Maryland Casualty's burden of production -- that is, the burden of coming forward with evidence from which the trial court could determine, as Daubert demands, that (1) the expert will testify to "scientific knowledge," and (2) the expert's testimony "will assist the trier of fact to understand or determine a fact in issue."**7**

Nevertheless, in treating this as a "burden of proof," Therm-O-Disc misreads Daubert. All Daubert demands is that the trial judge make a "preliminary assessment" of whether the proffered testimony is both reliable (i.e. based on "scientific knowledge") and helpful (i.e. of assistance to the trier of fact in understanding or determining a fact in issue).**8** As in all questions of admissibility, the proffering party must come forward with evidence from which the court can determine that the proffered testimony is properly admissible. However, there is no requirement in Daubert, or any other controlling authority, that the proffering party must "prove" anything to the court before the testimony in question can be admitted.**9**

_____

**5** Appellant's Br. at 18.
**6 Id.** at 20.
**7 Daubert v. Merrell Dow Pharm., Inc.**, 509 U.S. 579, 592 (1993).
**8 Id.**

**9 Daubert** cites Rule 104(a) of the Federal Rules of Evidence ("Rule 104(a)"), which states, in part, that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b)." Fed. R. Evid. 104(a) (West 1997). "Subdivision (b)" states that "[w]hen the relevancy of evidence depends

4

In replacing the stricter "general acceptance" test of <u>Frye v. United States</u>[10] with its requirement that the proferred testimony merely be reliable and helpful, the <u>Daubert</u> court expressly stated that it did so in keeping with the "`liberal thrust'"[11] of the Federal Rules of Evidence, and emphasized that the inquiry demanded by those rules is "a flexible one," one which focuses "solely on principles and methodology, not on the conclusions that they generate." [12] Thus, in addition to prescribing fluid and general standards for the admission of scientific testimony, <u>Daubert</u> also described the trial court's role as that of a "gatekeeper" who should exercise broad discretion in admitting scientific testimony that could later be tested by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . ."[13] As the Third Circuit has stated, plaintiffs do not "have to prove their case twice-- they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are <u>correct</u>, they only have to demonstrate by a preponderance of evidence that their opinions are reliable."[14]

_____

upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence <u>sufficient to support</u> a finding of the fulfillment of the condition." Fed. R. Evid. 104(b) (West 1997) (emphasis added).

<u>Daubert</u> references <u>Bourjaily v. United States</u>, 483 U.S. 171 (1987), for the proposition that "[t]hese matters should be established by a preponderance of proof." <u>Daubert</u>, 509 U.S. at 592 n.10. We do not, however, interpret "a preponderance of proof" to refer to a <u>burden</u> of proof, particularly as the Court in <u>Bourjaily</u> made the distinction between these two concepts, declaring that "the evidentiary standard is unrelated to the burden of proof on the substantive issues," and that "[t]he preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence <u>have been afforded due consideration</u>." <u>Bourjaily</u>, 483 U.S. at 175 (emphasis added).
**10** 293 F. 1013, 1014 (1923).
**11 <u>Daubert</u>**, 509 U.S. at 588 (citing <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 169 (1988)).
**12 <u>Id.</u>** at 594-95.
**13 <u>Id.</u>** at 596.
**14 <u>In re Paoli R.R. Yard PCB Litig.</u>**, 35 F.3d 717, 744 (3d Cir. 1994) (emphasis in original).

5

Neither party disputes that, at the beginning of the <u>Daubert</u> hearing, the district court told Jim Rothschild, counsel for Therm-O-Disc, "[y]ou have the burden of proof" with regard to Rodems's testimony.**15** However, counsel immediately corrected the district court on this point,**16** and from then forward it appears that the district court understood both the demands of <u>Daubert</u> and its own role as "gatekeeper,"**17** and conducted the hearing accordingly. Immediately after the objection, the district court withdrew its call for Mr. Rothschild to come forward and show that Rodems's testimony was not admissible, and called Rodems himself to the stand to explain the basis for that testimony. This Rodems did under both direct and cross-examination. After several hours of testimony, the district court determined that, although it had some reservations about the proffered basis for Rodems's opinion, "the defendant has failed to establish . . . [that] Mr. Rodems relied upon a scientific principle that was not valid."**18**

Therefore, we are satisfied that an examination of the record shows that no improper burden-shifting took place. Clearly, the court called upon Maryland Casualty to meet its burden of production by coming forward with evidence to support its contention that Rodems's testimony would be both reliable and helpful. When this was presented, Therm-O-Disc was given the opportunity to rebut, but was unsuccessful in persuading the court that Rodems's testimony was not as reliable or helpful as Maryland Casualty claimed.

From a review of the record, we conclude that the general process contemplated by <u>Daubert</u> took place in the hearing, and that Maryland Casualty squarely bore the burden of production. Therefore, we decline to reverse the district court's decision on this ground.

B.

Therm-O-Disc also claims that the district court failed, in contravention of <u>Daubert</u>, to take into consideration certain factors in mak-

_____

**15** J.A. at 4.
**16** <u>Id.</u>
**17** <u>See</u>, <u>e.g.</u>, <u>id.</u> at 100; 102.
**18** <u>Id.</u> at 184.

6

ing its decision to admit Rodems's testimony. Specifically, Therm-O-Disc argues that there is no evidence in the record that the district court considered any of the "four non-exclusive`general observations' that <u>are to be</u> evaluated by the trial judge"[19] pursuant to a <u>Daubert</u> inquiry.[20] But here again, we find that Therm-O-Disc has misread <u>Daubert</u>, and decline to disturb the district court's decision on this ground.

In <u>Daubert</u>, the Court established two factors that "the trial judge must determine"[21] before scientific expert testimony can be admitted. Those factors are, as stated above, (1) whether the testimony is based on "scientific knowledge" (i.e. knowledge grounded "in the methods and procedures of science"),[22] and (2) whether the testimony will be helpful to the trier of fact. The <u>Daubert</u> court described this mandated inquiry as "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[23]

However, beyond this inquiry, the <u>Daubert</u> court expressly declined to require consideration of any other specific factors, stating that "[m]any factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test."[24] The <u>Daubert</u> court did make what it termed "general observations"[25] regarding what a judge should keep in mind in determining the admissibility of expert scientific testimony, but it is clear that these "observations" do not constitute the mandatory criteria described by Therm-O-Disc.[26]

_____

[19] Appellant's Br. at 24 (emphasis added).
[20] <u>**See Daubert**</u>, 509 U.S. at 593-95.
[21] <u>**Id.**</u> at 592.
[22] <u>**Id.**</u> at 590. As stated above, "scientific" is often considered synonymous with "reliable." <u>See</u>, <u>e.g.</u>, Kenneth R. Foster & Peter W. Huber, <u>Judging Science: Scientific Knowledge and the Federal Courts</u> 15 (The MIT Press 1997).
[23] <u>**Daubert**</u>, 509 U.S. at 592-93.
[24] <u>**Id.**</u> at 593.
[25] <u>**Id.**</u>
[26] <u>**See**</u> Appellant's Br. at 24; <u>see also Daubert</u>, 509 U.S. at 598 (Rehnquist, C.J., concurring in part and dissenting in part).

Daubert clearly contemplates the vesting of significant discretion in the district court with regard to the decision to admit expert scientific testimony. Beyond establishing the two criteria of reliability and helpfulness, the Court has left the means by which these criteria are evaluated to the sound discretion of the district judge. This is apparent not only from Daubert itself,**27** but from subsequent Supreme Court precedent, holding that abuse of discretion is the proper standard by which evaluations of proferred evidence should be reviewed.**28** In addition, this circuit has taken the position that the Daubert court "was not formulating a rigid test or checklist," and was "relying instead on the ability of federal judges to properly determine admissibility."**29**

_____

**27 See Daubert**, 509 U.S. at 593 ("We are confident that federal judges possess the capacity to undertake this review.").

**28 Joiner**, 118 S. Ct. at 517.

**29 Benedi v. McNeil-P.P.C., Inc.** , 66 F.3d 1378, 1384 (4th Cir. 1995) (citations omitted). See also United States v. Bynum, 3 F.3d 769, 773 (4th Cir. 1993) ("The [Daubert] Court emphasized that it was prescribing a `flexible' rule, one committed, as are most questions of admissibility of evidence, to the discretion of the district courts."). Therm-O-Disc relies on United States v. Powers, 59 F.3d 1460 (4th Cir. 1995), for the proposition that, in this circuit's reading of Daubert, there are four factors "the Supreme Court directed trial courts to consider when evaluating the scientific validity of proposed evidence:

> (1) Whether the theory or technique used by the expert can be, and has been, tested;
>
> (2) Whether the theory or technique has been subjected to peer review and publication;
>
> (3) The known or potential rate of error of the method used; and
>
> (4) The degree of the method's or conclusion's acceptance within the relevant scientific community."

Powers, 59 F.3d at 1471 (citing United States v. Dorsey, 45 F.3d 809, 813 (4th Cir. 1995)).

While we agree that this language in Powers would appear to make consideration of the four factors mandatory, we recognize that Dorsey, which Powers quotes for these factors, expressly states that "trial courts may consider several factors," and lists them accordingly. Dorsey, 45 F.3d at 813 (emphasis added).

8

Thus, we reject Therm-O-Disc's contention that, beyond reliability and helpfulness, there are further considerations a district court <u>must</u> make in order to comply with the demands of <u>Daubert</u>. Further, in the present case, we are satisfied that the district court did not abuse its discretion in admitting Rodems's testimony.

As Maryland Casualty notes in its brief, Rodems is an electrical engineer with over twenty-five years experience in analyzing switch failures. Through his testimony, Rodems established that his opinion was based on his examination of the conditions inside the disputed switch and the application of principles of electrical engineering to those conditions.[30] Rodems was able to cite numerous works of technical literature that he alleged supported his mode of analysis,[31] and testified that his opinion regarding electrical failures has been admitted by at least one other district court.[32]

Based on this evidence, we hold that the trial court did not abuse its discretion in admitting Rodems's testimony. Maryland Casualty came forward with ample evidence from which the district court could have made its "preliminary assessment" of reliability and helpfulness, and the district court clearly did not find that Therm-O-Disc's rebuttal was sufficient to overcome that evidence. As the matter was within the district court's sound discretion, we find that it committed no error in deciding to admit the testimony.

II.

We next consider Therm-O-Disc's contention that Maryland Casualty did not prove a causal link between the thermostat and the fire in the Gitelson home, and thus that Therm-O-Disc was entitled to judgment as a matter of law. Under Maryland law, which applies in this diversity case, to recover in strict liability for a manufacturing defect, a plaintiff must establish, <u>inter alia</u>, a causal relationship between the claimed defect and the injury.[33] There is no question that

---

[30] J.A. at 10; 16; 23-24; 140.
[31] <u>Id.</u> at 16-18.
[32] <u>See id.</u> at 294-306.
[33] <u>Jensen v. American Motors Corp.</u>, 437 A.2d 242, 247 (Md. App. 1981).

the offered proof must rise above the level of speculation or conjecture.**34** Any facts that establish proof greater than speculation or conjecture, however, create a question for the jury.**35** Furthermore, proximate cause may be established by circumstantial evidence. **36**

In this case, the jury heard Rodems's theory that the thermostat was defective and caused the fire. Maryland Casualty introduced other evidence that ruled out any other cause of the fire. Under these circumstances, it was left to the jury to determine the question of causation, which it resolved in favor of Maryland Casualty. Examining the evidence in the light most favorable to Maryland Casualty, we hold that the jury properly reached its verdict.

III.

Finally, Therm-O-Disc disputes the district court's admission of Mrs. Gitelson's testimony concerning her damages. It argues that expert testimony was required to establish the value of Mrs. Gitelson's household goods.

Mrs. Gitelson testified as to the value of her household possessions, including the following: a $3,500 blouse, two $2,000 dresses, several dresses worth $1,000 or more, sixty sweaters and pairs of shoes valued at over $200 each, two sofas worth a total of $25,000, a shower curtain valued at almost $1,900, and other similarly expensive items. In Lakewood Engineering & Manufacturing Company v. Quinn,**37** the Maryland Court of Appeals took note "of the long-standing rule that an owner of property can testify as to its value."**38** Under Maryland law, a homeowner can testify as to the fair market value of common consumer goods, which will usually be close or equal to their replace-

_____

**34 Id.** at 245.
**35 C & K Lord, Inc. v. Carter**, 536 A.2d 699, 709 (Md. App. 1988).

**36 McSlarrow v. Walker**, 467 A.2d 196, 200 (Md. App. 1983).

**37** 604 A.2d 535 (Md. App. 1992).
**38 Lakewood Eng'g & Mfg. Co. v. Quinn**, 604 A.2d 535, 542 (Md. App. 1992).

ment cost. Expert testimony, however, is required to establish the value of unusual items such as rare books or art work.**39**

Therm-O-Disc argues that the items Mrs. Gitelson lost in the fire were so unusual as to require expert testimony. Therm-O-Disc's position confuses the nature of the goods with the quality of the goods. While the goods in question were clearly expensive, they were indisputably common, household goods. Thus, we hold that, under Lakewood, no expert was required, and that Mrs. Gitelson's testimony was sufficient to establish her damages.

IV.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

_____

**39** Id. at 542-43.

11